**Roy GARLAND, Petitioner-Appellant,**

v.

**Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General of Louisiana, Respondents-Appellees.**

No. 82–3237.

United States Court of Appeals, Fifth Circuit.

Oct. 17, 1983.

Harold J. Lamy, New Orleans, La., for petitioner-appellant.

Abbott J. Reeves, William C. Credo, III, Asst. Dist. Attys., Gretna, La., for respondents-appellees.

## ON PETITION FOR REHEARING

Before BROWN and JOLLY, Circuit Judges, and MAHON *, District Judge.

E. GRADY JOLLY, Circuit Judge:

In a previous unpublished opinion, 706 F.2d 313 (5th Cir.1983) this panel found that

* District Judge of the Northern District of Texas, sitting by designation.

Roy Garland had not exhausted his available state remedies with respect to all of the claims he was asserting. As a result, we remanded the case to the district court for appropriate disposition. *See Burns v. Estelle,* 695 F.2d 847 (5th Cir.1983). Because we were concerned that the record was incomplete, we informed Garland that if he could provide, in a petition for rehearing, documentation which showed that he had exhausted his available state remedies, we would consider his claims. Garland has made the required showing in a petition for rehearing. We therefore GRANT his petition for rehearing for the purpose of VACATING our prior opinion and substituting the following in its stead.

### I.

Roy Garland appeals from a judgment of dismissal entered by the United States District Court for the Eastern District of Louisiana denying his petition for a writ of habeas corpus. The petition asserted three grounds for relief: (1) an unconstitutional jury instruction deprived Garland of a fair trial; (2) Garland was denied effective assistance of counsel during his state trial; and (3) the evidence adduced at the state trial was not sufficient to support Garland's conviction. On appeal, Garland reasserts those grounds. We affirm the district court's denial of relief.

### II.

On April 2, 1975, Thomas Burns was murdered in front of his home in Kenner, Louisiana by a man who summoned him to the door of his house and proceeded to shoot him at least five times at close range with a small caliber handgun. The murderer then fled the scene of the crime.

Burns had been dating a woman, Martha White, who had previously been romantically involved with the appellant, Roy Garland. Garland had become aware of Burns' relationship with the woman and, a few days

prior to Burns' murder, had threatened to kill him.

Garland was arrested and indicted for Burns' murder. Following a jury trial in the Twenty-Fourth Judicial District Court of Jefferson Parish, Louisiana, Garland was convicted of second degree murder. His conviction was affirmed in *State v. Garland,* 352 So.2d 699 (La.1977).

Following the filing of an unsuccessful state habeas petition, Garland filed his second petition for writ of habeas corpus in federal district court.[1] As noted above, he requested relief on the grounds that an unconstitutional jury instruction deprived him of a fair trial, that he was denied effective assistance of counsel during his state trial and that the evidence adduced at his state trial was not sufficient to support his conviction.

The district court referred Garland's petition to a United States Magistrate. The magistrate found that there was no merit to Garland's claims and recommended that Garland's petition be dismissed. The district court approved the magistrate's report and recommendation and entered its judgment dismissing Garland's petition. This appeal followed.

### III.

Garland was indicted for second degree murder of Burns in violation of LSA–R.S. 14:30.1 which stated at the time the indictments were issued:

Second degree murder is the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; or

(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill.

---

1. In a previous petition in federal district court, Garland applied for habeas corpus relief urging fourth amendment violations. Relief was denied by the district court. Garland's appeal of that denial was dismissed by this court.

Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation or suspension of sentence for a period of twenty years.

Because Garland was not engaged in the perpetration or attempted perpetration of any of the crimes listed in LSA–R.S. 14:30.-1(2) when he shot Burns, he could be convicted of second degree murder only if he possessed the requisite intent to kill or inflict great bodily harm. In instructing the jury concerning the nature and character of the crime of second degree murder, the trial court stated:

> The law holds that a person is presumed to intend the natural and probable consequences of his own deliberate acts. Consequently, it is murder if a person intentionally assaults another in such a manner as would likely cause death or likely cause serious bodily harm.

■ The due process clause of the fourteenth amendment requires that the state prove the existence of every element of a criminal offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Therefore, the state bore the burden of proving beyond a reasonable doubt that Garland possessed the requisite intent to kill or inflict great bodily harm when he shot Burns. Garland contends that the foregoing instruction relieved the state of its burden and violated his due process rights.

■ In the Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" was adjudged violative of the due process clause of the fourteenth amendment. The first sentence of the instant jury instruction is substantively indistinguishable from that which was adjudged

constitutionally unsound in *Sandstrom*. It follows that the instant instruction was constitutionally unsound.[2]

■ A plea of "not guilty" places all elements of the charged crime into issue, *Davis v. United States,* 160 U.S. 469, 488, 16 S.Ct. 353, 358, 40 L.Ed. 499 (1895), thereby forcing the state to establish every element beyond a reasonable doubt. *In re Winship, supra.* Under most circumstances, a *Sandstrom* instruction effectively relieves the state of its constitutional burden of proving the element of requisite intent.

■ Assignments of error predicated upon *Sandstrom* instructions, however, have been subjected by this circuit to the harmless error test as pronounced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Healy v. Maggio*, 706 F.2d 698 (5th Cir.1983); *United States v. Fricke*, 684 F.2d 1126, 1129 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983); *Mason v. Balkcom*, 669 F.2d 222, 226 (5th Cir.1982) *cert. denied,* —— U.S. ——, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983). Application of a "harmless error" analysis to a *Sandstrom* instruction, therefore, poses the question of whether, given the record evidence, the state's release from its constitutional burden could have contributed to the conviction. Phrased differently, a *Sandstrom* instruction can be deemed harmless if no rational juror could have concluded from the record evidence that the perpetrator of the crime lacked the requisite intent. *Healy v. Maggio,* 706 F.2d at 701–02; *U.S. v. Fricke,* 684 F.2d at 1129.

■ The corrupting effect of a *Sandstrom* instruction depends upon the nature of the defense, if any, made at the trial. Where a defense of non-participation in the criminal act is urged at trial, the effect of a *Sandstrom* instruction as a factor upon which the verdict was based may diminish,

---

**2.** The *Sandstrom* decision was decided some four years after Garland's state trial. Because of the manner in which we decide this case *infra*, however, it is unnecessary for us to consider the serious question of whether *Sandstrom* should be retroactively applied. We

note that this court in *United States v. Spiegel,* 604 F.2d 961, 969 n. 15 (5th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980), strongly indicated that *Sandstrom* was not to be retroactively applied.

particularly where the conduct or nature of the crime, as evidenced by the record, firmly negates any reasonable possibility that the perpetrator of the crime, whoever it may have been, lacked the requisite intent. *U.S. v. Fricke,* 684 F.2d at 1129; *McGuinn v. Crist,* 657 F.2d 1107 (9th Cir.1981) *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982); *United States v. Winter,* 663 F.2d 1120, 1143–45 (1st Cir.1981).

In the instant case, the defense of non-participation was advanced at trial: Garland denied having shot Burns. As discussed *infra,* the evidence was sufficient to prove beyond a reasonable doubt that Garland shot Burns. The pertinent inquiry, therefore, is whether a rational factfinder might have concluded that Garland, once identified as the perpetrator, lacked the requisite intent to commit second degree murder had not the erroneous instruction been given.

The inference of intent is inescapable from the evidence produced concerning the nature of the criminal act. The proximity of the perpetrator to the victim, the deadliness of the weapon utilized, the repetitious firing of the weapon, the flight following the act, and other circumstances surrounding the shooting of Burns, demonstrate beyond any doubt whatsoever that it was neither a negligent nor a reckless act. Upon such evidence, no rational juror could have possibly concluded that the person who shot Burns lacked the requisite intent to kill him or inflict great bodily harm. Therefore, the *Sandstrom* instruction given by the trial court must be considered harmless beyond a reasonable doubt.

## IV.

Garland's claim of ineffective assistance is based on his trial counsel's failure (1) to file a motion to suppress evidence obtained by search warrants supported by affidavits which contained an intentional misrepresentation by the affiants; (2) to file a motion to suppress evidence seized from Garland's vehicle which were beyond the scope of the search warrant; (3) to have the state conduct a preliminary hearing; (4) properly to investigate and prepare for trial; (5) to obtain evidence that the state's principal witness had previously perjured herself in a previous judicial hearing, and (6) to object to a particular jury instruction.

The proper test in reviewing this claim is "whether counsel's actual performance, considered in the light of the totality of circumstances in this case, was seriously inadequate and whether counsel's inadequacy prejudiced the fairness of [Garland's] trial. *Boyd v. Estelle,* 661 F.2d 388, 389 (5th Cir.1981).

Garland's first contention with respect to his counsel's failure to file a motion to suppress is premised on his claim that three search warrants used to obtain evidence presented at his 1975 state trial were supported by affidavits containing an intentional misrepresentation by the affiant. At the time of his state trial, the law in this circuit was that search warrant affidavits containing misrepresentations made with intent to deceive a judicial officer were invalid, irrespective of whether the error was material to showing probable cause. *United States v. Thomas,* 489 F.2d 664 (5th Cir.1973).[3] Therefore, he claims that had his counsel filed the motion, the court, because of the intentional misrepresentation, would have been required to suppress the evidence obtained by the use of the search warrants.

---

**3.** However, the United States Supreme Court has subsequently held in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), that if

> a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, . . . [and that if], with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be

voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155–156, 98 S.Ct. at 2676, 57 L.Ed.2d at 672.

Assuming, without deciding, that the effect of an affidavit supporting a search warrant is to be evaluated according to the law in effect on the date the warrant is issued, we apply *Thomas*'s stricter standard to Garland's claim.

Garland specifically claims that a statement contained in each of the affidavits by the affiant that a technician had found that a latent fingerprint taken from an automobile believed to have been used in Burns' murder "to be in his opinion, the right thumb print of Roy A. Garland," was an intentional misrepresentation.

Our review of the record clearly convinces us that there was no intentional misrepresentation. As revealed by the record of the state evidentiary hearing which was conducted on Garland's post-conviction writ of habeas corpus, a technician in the Jefferson Parish Sheriff's Office had been asked to examine a fingerprint to compare that print with the prints of three individuals, one of them being Roy Garland. This fingerprint had been found in an abandoned automobile which was believed to have been used by Burns' murderer. While he was examining the print and after having found three points of identification between that print and the right thumb print of Roy Garland, the technician was called by a detective and asked what his examination had disclosed. Following a conversation with the technician about his examination of the prints, the detective made the erroneous statement in the affidavit which was used to support an application for a search of Garland's home. A similar statement was made in affidavits used to support applications for a search of Garland's automobile and to obtain samples of his blood.

The technician's and detective's testimony concerning their conversation about the prints which was offered at the state evidentiary hearing, convinces us that the detective did not make an intentional misrepresentation in the affidavit concerning the technician's opinion that the print was that of Roy Garland's thumb. It appears that he had no knowledge that the technician had not completed his examination. Certainly, he had no knowledge that the technician would change his opinion concerning the print.[4] At the most, the statement of the affidavit was an unintentional misrepresentation. Applying *Thomas,* the search warrants, in such circumstances, would be invalid if, when purged of the unintentional misrepresentation, the affidavits were insufficient to support a probable cause finding. After reviewing the affidavits, we find that each affidavit, absent the statement about Garland's fingerprint, is still sufficient to support a probable cause finding. In so doing, we rely particularly on the fact that each affidavit referred to a threat which Garland had made against Burns and to the fact that blood of a type which matched Garland's was found in the automobile which matched the general description of the vehicle used in Burns' murder.

■ Focusing on the second prong of the two-part test for reviewing claims of ineffective assistance of counsel referred to above, we must therefore reject Garland's claim concerning his trial counsel's failure to file a motion, grounded on the fingerprint statement, seeking suppression of the evidence produced by the three search warrants. Because such a motion would not have been successful, it necessarily follows that Garland suffered no prejudice from his trial counsel's failure to attempt to suppress the evidence obtained by the search warrants.

Garland's second contention with respect to his counsel's failure to file a motion to suppress is premised on his claims that certain evidence seized during the search of his automobile—vacuum sweepings from inside the car and soil samples from its underside—were outside the scope of the search warrant for that vehicle.[5] He argues that had his counsel filed a motion to suppress

---

4. At Garland's trial, the technician testified that the latent print could not be identified as that of Garland's thumb. At the time of his conversation with the detective, however, there is no indication that he was trying to mislead or deceive anyone by connecting the print to Garland. Based on his incomplete examination and the three identification points, we cannot say that he was not justified in concluding that the print matched Garland's thumb print.

5. A warrant had been obtained to search Garland's automobile for "a small caliber handgun, bluish green clothing and bloody clothing."

this evidence, the trial court would have suppressed the same.

■ Generally, only items described in a search warrant may be seized. An exception to this general rule, however, is found where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character. The property is then seizable. Also, property which has a sufficient nexus to the crime being investigated may be seized at the time officers are properly executing a warrant authorizing a search for other items. *United States v. Kane,* 450 F.2d 77 (5th Cir.1971); *United States v. Bills,* 555 F.2d 1250, 1251 (5th Cir.1977); *United States v. Davis,* 589 F.2d 904 (5th Cir.1979).

■ Here, during the execution of a valid warrant for the search of Garland's automobile, officers seized items whose seizure was not authorized by the warrant. The case law discussed above, however, would allow the admission of these items into evidence. Because such a motion would not have been successful, it necessarily follows that Garland suffered no prejudice from his trial counsel's failure to attempt to suppress, on the basis of the scope of the search warrant, the evidence obtained from the search of Garland's car. Therefore, we must reject Garland's claim of ineffective assistance of counsel based on such a failure.

Garland's next complaint concerns his trial counsel's waiver of a preliminary hearing. As the record of the state evidentiary hearing revealed, trial counsel, with Garland's agreement, waived the preliminary hearing for reasons of tactics and trial strategy.[6] Garland apparently contends that the waiver of the preliminary hearing deprived him of a valuable discovery tool and thereby hampered his defense.

■ A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness. *Fitzgerald v. Estelle,* 505 F.2d 1334 (5th Cir.1975); *Daniels v. Maggio,* 669 F.2d 1075 (5th Cir.1982). Garland has not shown prejudice in the requisite degree.

■ Garland also complains of his trial counsel's failure to attack Martha White's credibility by questioning her about committing perjury in another judicial hearing.[7] Assuming that trial counsel was aware of this information and failed to use it to attack White's credibility, his decision not to do so was obviously a matter of trial tactics. Having failed to show that his decision not to use the information in such a manner was so ill chosen that it permeated the entire trial with obvious unfairness, trial counsel's decision cannot serve as the basis for constitutionally ineffective representation. *Fitzgerald v. Estelle, supra; Daniels v. Maggio, supra.*

■ The claim that trial counsel rendered ineffective assistance by failing to object to one of the trial judge's jury instructions is also without merit. The trial judge instructed the jury that "[t]he law holds that a person is presumed to intend the natural and probable consequences of his own deliberate acts." We find, for the following reasons, that trial counsel's failure to object to the instruction did not constitute ineffective assistance of counsel.

**6.** Trial counsel had been told by both Garland and his mother that Martha White was reluctant to testify, was thinking about not testifying and was thinking about leaving Louisiana. White was a witness to the death threat which Garland made against Burns. Trial counsel feared that White would be called as a witness at a preliminary hearing. Not wanting to perpetuate White's testimony, or, if she refused to testify, to allow the state to use permissible measures into pressuring her into testifying, trial counsel chose, with Garland's consent, to waive the preliminary hearing. A second con-

sideration was the state's agreement with trial counsel to allow him to have access to information in the state's case file.

**7.** According to Garland, he had told his trial counsel that during a child custody hearing White had lied when she denied going with Garland to visit his brother at a federal prison in Texas. Garland contended that he had a picture of the three of them which was taken there.

Sandstrom, the case in which the Supreme Court held such an instruction to be unconstitutional, was not decided until 1979, some three years after the petitioner's trial. Counsel's inability to foresee future pronouncements does not render his representation ineffective. As this court has said, "Clairvoyance is not a required attribute of effective representation." *Cooks v. United States,* 461 F.2d 530 (5th Cir.1972).

Moreover, having previously reached the conclusion that the *Sandstrom* instruction was harmless beyond a reasonable doubt, *supra,* we must necessarily adjudge as meritless Garland's related assertion that his trial counsel was ineffective for failing to object to the instruction. *Baldwin v. Maggio,* 704 F.2d 1325, 1333 (5th Cir.1983).

■ Lastly, Garland contends that his trial counsel was ineffective because he did not devote "the time necessary to properly investigate and prepare." According to Garland, this was a result of his trial counsel's preoccupation with his service in the Louisiana State Legislature. A review of the record reveals that counsel devoted sufficient time to insure an adequate defense and to become familiar with the facts of the case and the law applicable thereto. As even Garland admitted at the evidentiary hearing, "he had the information . . . ." Trial counsel, an experienced criminal attorney, diligently and conscientiously represented Garland during his trial. By no means was his representation constitutionally ineffective because of inadequate preparation or for any other reason.

## V.

Garland claims that there is insufficient evidence to sustain his conviction for murder. Applying *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to this case,[8] it becomes our task to determine whether, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found proof of Garland's guilt beyond a reasonable doubt. If no rational trier of fact could have done so, Garland is entitled to relief.

■ Applying this test to the evidence, we cannot say that Garland is entitled to relief. Scientific evidence was adduced which linked Garland to the crime.[9] Moreover, Martha White, who had been dating Garland, testified that he, after learning of her involvement with Thomas Burns, told her that "Tom would see me at my funeral or he would see Tom at his." This threat was made a few days before Burns' murder.

Under Louisiana law, as discussed *supra,* the specific intent to kill or do great bodily harm is an element of the crime for which Garland was convicted. He argues that the evidence was insufficient to sustain a finding that he possessed the requisite intent. Under the evidence discussed above, a rational factfinder, finding that Garland was the individual who shot Burns, could also find that he intended to kill Burns or do great bodily harm upon him. In conclusion, a review of the record in this case in the light most favorable to the prosecution shows that a rational factfinder could have found Garland guilty beyond reasonable doubt.

For the reasons stated above, the district court's judgment that there was no merit in Garland's exhausted claims and its dismissal of his petition is

AFFIRMED.

8. *Jackson* is to be applied retroactively. *Holloway v. McElroy,* 632 F.2d 605 (5th Cir.1980).

9. A stolen vehicle was used in Burns' murder. Access had been gained to this vehicle by breaking its vent window. In breaking the window, the person stealing the car had been cut and blood was found on the driver's door. Glass particles found in this vehicle matched those taken from Garland's vehicle. The type of blood taken from the stolen vehicle's door matched Garland's blood type. Hair fibers taken from the stolen vehicle used in Burns' murder matched those of Garland. Soil samples taken from the area where the stolen vehicle was found matched soil which was taken from the underside of Garland's vehicle. A bloody sheet was taken from Garland's house on the day of the murder. Blood on this sheet matched Garland's blood type and that of the blood taken from the stolen vehicle. There was no exculpatory evidence offered by the defense with respect to these items connecting Garland to the murder.