UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose G. CANTU and Shirley A. Fontenot,
Defendants-Appellants.

No. 85–2185
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 24, 1985.

---

Michael P. Haines, J.L. Sadick, Houston, Tex., for defendants-appellants.

Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Vincent L. Gambale, Washington, D.C., for plaintiff-appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

PER CURIAM:

On appeal in this case we are asked to determine whether the district court properly allowed into evidence materials and documents seized during a warrant-authorized search. Because we find that the search was legally authorized and conducted, we affirm.

## I

The evidence in this case showed that from about January 1, 1982 to March 30, 1983, the appellant Jose Cantu conspired with Steven Austin to file false income tax returns for the years 1980 and 1981 in the names of the appellant Shirley Fontenot, Austin, and four other individuals. The returns claimed unjustified tax refunds for 1981 totalling $239,166. Additionally, an unjustified claim for $18,955 was filed in 1980 by Cantu and Austin on behalf of Austin. These claims were supported by false W-2 Forms fabricated by Cantu.

The Internal Revenue Service's Criminal Investigations Division received information about this tax fraud conspiracy from a friend of Austin, James Brady, who had refused to participate in the fraudulent tax scheme. The government verified Brady's information and other indications of tax fraud by Cantu. Based upon this and other information,[1] the IRS procured a search warrant on March 22, 1983 to search the "office of CARLOS CANTU TAX AND BUSINESS CONSULTANT located behind the only door on the left after entering the front door of Suite 375 at 5959 West Loop South, Houston (Bellaire), Texas." During the search, the government seized numerous tax returns and other documents that revealed the extent of the appellants' involvement in the tax scheme.

Jose Cantu, Shirley Fontenot and codefendant Steven Austin [2] were charged in an eighteen-count indictment consisting of one

---

1. Probable cause supporting the search warrant is not contested in this appeal.

2. Austin was convicted in a separate trial. His appeal to this court, No. 85–2138, has been briefed and argued.

count of conspiracy to commit tax fraud in violation of 18 U.S.C. § 286, seven counts of filing false tax returns in violation of 18 U.S.C. § 287, one count of theft of government money by converting a tax refund check in violation of 18 U.S.C. § 641, and nine counts of mail fraud in violation of 18 U.S.C. § 1341. Cantu was convicted on all counts. Fontenot was convicted on one count of filing a false tax return and on two counts of mail fraud.[3]

Cantu was sentenced to a total of six years imprisonment to be followed by a five-year term of probation, and was ordered to pay $15,000 restitution. Fontenot was sentenced to eighteen months imprisonment, to be followed by a three-year term of probation. The appellants filed a timely notice of appeal.

## II

The sole contention of Cantu and Fontenot on appeal is that the district court erred in denying their motion to suppress the materials seized during the search of Jose Cantu's office on March 22, 1983. These materials consist primarily of copies of the false tax refund claims and bogus W–2 forms. Appellants contend that the warrant insufficiently described the items to be seized and as such permitted a "general" search in contravention of the fourth amendment. They further contend that the search warrant and affidavit, in naming the office of Carlos Cantu Tax & Business Consultant as the place to be searched, did not authorize a search of the office of Jose Cantu.

## A.

The appellants argue that the March 22 warrant was too general because the warrant did not limit the authorized search to materials relating to the claims of tax fraud that the government had knowledge of at the time of the search. Because the warrant left the agents with too much discretion as to the things subject to seizure,

the appellants contend it was unconstitutional. To support this contention, the appellants cite *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

In *Stanford*, the warrant broadly authorized the seizure of "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas." 379 U.S. at 478–79, 85 S.Ct. at 508. After a four-hour search, the agents seized more than 2,000 items, including materials from Stanford's business, books written by such authors as Karl Marx, Jean Paul Sartre, Earl Browder, and Pope John XXIII, and personal papers including Stanford's marriage certificate, insurance policies, and household bills. No "records of the Communist Party" or any "party lists [or] dues payments" were found. *Id.* at 479–80, 85 S.Ct. at 509. Most of "the vast quantity of materials seized in *Stanford* were [not] even remotely related to any legitimate government interest." *Nixon v. Administrator of General Services*, 433 U.S. 425, 462, 97 S.Ct. 2777, 2799, 53 L.Ed.2d 867 (1977). The Supreme Court held the *Stanford* search unconstitutional.

Unlike *Stanford*, however, in the instant case the warrant limited its authorization to the seizure of:

Federal income tax returns and related forms and documents; copies of Federal income tax returns and related forms and documents; workpapers used in the preparation of Federal income tax returns; logs, rosters, writings, records, notes, or other lists regarding Federal income tax returns claiming refunds having been prepared and/or filed; U.S. Government checks resulting from false Federal income tax refund claims; typewriters used in the preparation of false refund Federal income tax claims; and all other property that constitutes evidence of the preparation and filing of false Federal income tax refund claims;

---

**3.** Fontenot was acquitted by the district court on fifteen of the eighteen counts before the case

was submitted to the jury.

any computer hardware or computer software.

The case agent's affidavit and supporting exhibits attached to the warrant detailed the nature of the tax fraud investigation and identified specific documents. In his affidavit, the agent noted that, from his experience in investigating such matters, people engaged in multiple tax-refund schemes usually maintain lists or copies of the false W–2 forms or refund claims, as well as records of bank accounts used for depositing or cashing any U.S. Treasury checks they receive as refunds based upon the false claims.

The materials specified in the warrant were all directly related to the unlawful activity of the appellants. The warrant clearly identified the documents subject to seizure, all of which were financial records related to tax fraud. The items actually seized, such as the false refund claims and bogus W–2 Forms, fell squarely within the scope of the warrant. Unlike *Stanford,* the warrant in the instant case was not too general.

Moreover, the government made no error in not limiting the warrant to only those fraud claims about which they had specific information. There is no requirement that the government agents know in advance the specific items of evidence to be seized or that the items seized do in fact evince a crime, so long as they are within the scope of a properly authorized warrant. *See Andresen v. Maryland,* 427 U.S. 463, 479–82, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627 (1976).

Finally, even if the government seized documents that were outside the specifications of the warrant, we could not reverse. Although the general rule is that only items described in a search warrant may be seized, we have recognized an exception that allows a government official reasonably to seize additional incriminating material discovered during an authorized search for other specified objects. *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir.1983). In *Garland,* we stated that

"property which has a sufficient nexus to the crime being investigated may be seized at the time officers are properly executing a warrant authorizing a search for other items." *Id.*

Thus, we reject the appellants' contention that the warrant was too broad and hold that all items seized were properly within the authority of the warrant.

**B.**

The appellants also challenge the validity of the search on the ground that the warrant authorized a search only of the office of Jose Cantu's brother, Carlos. The challenged search warrant authorized a search of the: "office of CARLOS CANTU TAX AND BUSINESS CONSULTANT located behind the only door on the left after entering the front door of Suite 375 at 5959 West Loop South, Houston (Bellaire), Texas."

At the suppression hearing, Jose Cantu testified about the physical layout of the premises at Suite 375, 5959 West Loop South in Houston. Suite 375 opens to a reception area around which are several doors to individual offices. Carlos Cantu had the name "Carlos Cantu Tax and Business Consultant" on the front door of the suite, the sole entrance to the suite, but did not have his name on the door of his individual office. Several separate businesses, including a fence company, a tax computer firm, an engineering firm, and the appellant's brother's consultancy, had offices in the suite at the time of the search. Jose Cantu's office did not face or open to the reception area. To reach his office, the agents had to walk through the fence company office, which was located behind the only door on the left after entering the front door of Suite 375. This was the exact location specified in the warrant. Thus, there was no discrepancy between the location specified in the warrant and the office actually searched.

We find that the warrant adequately described the area subject to the government search. This court has stated that

a warrant's description of the place to be searched need not meet technical requirements nor have the specificity sought by conveyancers. It need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority.

*United States v. Haydel,* 649 F.2d 1152, 1157 (5th Cir.), *corrected,* 664 F.2d 84 (1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982). The warrant in this case satisfied these requirements and cannot be said to have limited the authorized search to only the individual office of Carlos Cantu.

### III

For the reasons stated herein, the judgment of the district court is

AFFIRMED.