**UNITED STATES of America**

v.

**Frankie D. PELHAM.**

**Cr. No. 90–0247 (CRR).**

United States District Court, District of Columbia.

Oct. 31, 1990.

---

Bruce E. Yannett, Asst. U.S. Atty., with Jay B. Stephens, U.S. Atty., District of Columbia, for government.

John J. Carney, Washington, D.C., for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

The defendant in the above-captioned case has filed a motion to suppress physical evidence and incriminating statements. He argues that the search warrant, whose execution triggered this prosecution, was defective because: (i) the supporting affidavit contained material false statements; (ii) the supporting affidavit did not establish probable cause; and (iii) the warrant was not sufficiently particularized. In addition, the defendant contends that various statements he made to the police were tainted by the foregoing unlawful conduct and were, in any event, obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny. Having carefully considered the parties' written submissions, the testimony elicited at the motions hearing, the entire record herein, and the underlying law, the Court will deny the defendant's motion to suppress, except with reference to one of the defendant's statements which the government has correctly conceded may not be used in its case-in-chief.

### I. Factual Background [1]

The search warrant application and supporting affidavit in this case arose out a "drive-by shooting" that occurred on October 25, 1989. On that date, Ivory Williams was sitting on the porch of Ricardo Bailey's house when a red/burgundy station wagon with four individuals wearing black hooded sweat jackets drove by. Two of these individuals leaned out of the car and fired shots at Williams, grazing his head. At some point after this shooting, Williams identified the four individuals involved in the shooting and specifically identified—by name and photograph—the defendant Frankie Pelham, whom Williams had known for three or four years, as one of the four perpetrators.[2] Although the defendant's investigator subsequently interviewed Williams and took notes indicating that Williams had never identified the defendant, *see* Motion to Suppress, Exh. 2, Williams refused to sign the statement. Moreover, at the hearing, Williams refuted the investigator's statement and emphatically reaffirmed that he had identified the defendant. *See* Motions Hearing Tr. at 13–17, 20–22.

On April 26, 1990, Metropolitan Police Department ("MPD") Officer Angelo Parisi

---

1. The following recitation of facts constitutes the Court's "essential findings" stated on the record as required by Fed.R.Crim.P. 12(e).

2. The only other eyewitness to the shooting, Ricardo Bailey, has signed a statement that he does not know the defendant and that, while he named the other three individuals in the station wagon, he never identified the defendant. Furthermore, the defendant testified at the motions hearing that, at the time of the shooting, he was in class at the University of the District of Columbia ("UDC"), and he introduced a class attendance list to support this contention, *see* Supplemental Memorandum in Support of Motion to Dismiss, Exh. 2 (sealed).

applied for a search warrant for the defendant's residence. The search warrant stated there was probable cause to believe that a black hooded sweat jacket and mail matter, records and telephone numbers showing an association between identified individuals were concealed at the defendant's apartment. Officer Parisi's supporting affidavit described the defendant's residence in detail; discussed the drive-by shooting perpetrated by four individuals wearing black hooded sweat jackets; identified by name and address the four individuals (including the defendant) based upon interviews of the complaining witness and corroborating witnesses; and stated that the two passenger-shooters had already been arrested for the shooting. Finally, the supporting affidavit concluded:

> Even though some time has elapsed since the shooting, it is probable that stored within ... [the] residence of Frankie Pelham is the personal article of clothing worn on the date of the shooting. Further, because of the geographic distance between the identified individuals, it is also probable that documents exist that show association between these persons.

Motion to Suppress, Exh. 1.

A Superior Court Judge approved the warrant on April 26, 1990, and on May 3, 1990 four law enforcement officers executed the search warrant. When they knocked on the door of the apartment where the defendant lived with his mother, the defendant let them in. The officers showed the defendant the search warrant, and, as he testified at the motions hearing, they treated him with respect. Motions Hearing Tr. at 37. In response to a question about where he kept his belongings, the defendant told the officers that he kept his "stuff" in a dresser and a closet. The police officers recovered from that closet a loaded sawed-off shotgun and a shoe box containing several bags of crack. At that point, they placed the defendant under arrest and advised him of his *Miranda* rights. One of the officers told the defendant that he was a fool for having drugs in his mother's apartment and that he was lucky that the Vice Squad officers had not executed the search warrant because they may have locked up his mother. Then, when the officers asked the defendant to whom the gun and the drugs belonged, he admitted that they were his. The officers also recovered a safe, which the defendant stated belonged to him and contained a pistol. When the officers later opened the safe at the police station, they recovered a loaded pistol, some shotgun shells, a large rock of crack, and some personal papers with the defendant's name.

The police officers transported the defendant to the police station. While he was being processed, one of the officers asked Officer Parisi whether the rocks of crack recovered from the defendant's closet were worth $50 on the street, and the defendant, overhearing the question, stated that they were $20 rocks. Later, after the defendant was again advised of his *Miranda* rights and had executed a form indicating that he did not want to answer any questions without having an attorney present, the police officers asked him to whom the safe and its contents belonged. The defendant responded that the safe and its contents (the drugs and the gun) belonged to him.

The defendant has not been charged for his alleged involvement in the October 1989 drive-by shooting but he is charged in this case with: (1) possession with the intent to distribute five or more grams of cocaine base, (2) possession of an unregistered firearm, and (3) possession of firearms during a drug trafficking offense. In addition to the motion to suppress physical evidence and incriminating statements, the defendant has filed a motion for production of minutes and transcripts of grand jury testimony involving the October 1989 drive-by shooting.

## II. Analysis

### A. Physical Evidence

■ As a threshold issue, the Court holds that the defendant's challenge to the search warrant based upon material false statements allegedly knowingly and intentionally or recklessly made by Officer Parisi in the supporting affidavit clearly must fail. In *Franks v. Delaware*, 438 U.S. 154,

98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court explained the standard for evaluating a defendant's challenge to the veracity of a sworn statement used by the police to obtain a search warrant. The *Franks* Court recognized that there is "a presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171, 98 S.Ct. at 2684. However, the Court held that if "the allegation of [the affiant's] perjury or reckless disregard [for the truth] is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded." *Id.* at 156, 98 S.Ct. at 2676.

Although the defendant's *Franks* argument initially seemed plausible based upon his written submissions concerning the complaining witness Williams' alleged repudiation of Officer Parisi's affidavit,[3] Williams' testimony at the motions hearing directly contradicted the defendant's written representations. *See* Motions Hearing Tr. at 13–17, 20–22. By reaffirming his identification of the defendant, Williams fatally weakened the defendant's argument on this issue. The essential question before this Court is not whether the defendant was one of the four individuals involved in the October 1989 drive-by shooting of Williams but rather whether Officer Parisi's sworn statement that the defendant had been identified as one of the passengers in the vehicle was intentionally or recklessly false. Thus, for the purposes of this *Franks* inquiry, it is irrelevant that the other witness Bailey did not identify the defendant and—even assuming *arguendo* that this is true—that the defendant could

not have been in the station wagon during the shooting because he was attending class at UDC. All that matters here is whether Williams identified the defendant—*correctly or incorrectly*—as one of the four perpetrators of the shooting. Because there is nothing substantial on this record to indicate that Williams did not so identify the defendant, the defendant has not carried his burden under *Franks* of proving by a preponderance of the evidence that Officer Parisi knowingly and intentionally, or with reckless disregard for the truth, made material false statements in his supporting affidavit.[4]

■ Nor does the defendant's argument that the supporting affidavit failed to establish probable cause have any merit. The government conceded at the motions hearing, and this Court agrees, that the affidavit in support of the search warrant in this case was far from perfect. However, the Court—keeping in mind the deferential standard of review applicable to another judicial officer's finding of probable cause, *see United States v. Vaughn*, 830 F.2d 1185, 1187 (D.C.Cir.1987)—holds that Officer Parisi's affidavit was sufficient to establish probable cause within the "totality of the circumstances" test of *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983).

Although the drive-by shooting, which was the predicate for the warrant, had occurred six months before Officer Parisi applied for the warrant, the length of that delay is only one factor in the analysis and does not *per se* make the affidavit "stale." *See, e.g., United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir.1987) (finding probable cause to search for illegal gun silencers despite nine-month delay); *United States*

---

**3.** Since the defendant's written allegations of deliberate falsehood or reckless disregard for the truth were sufficiently specific and seemed to be supported by an offer of proof in accordance with *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684, the Court granted the defendant's request for a *Franks* evidentiary hearing.

**4.** For essentially the same reason—that the defendant has failed to substantiate his allegation that Williams never identified the defendant to the police—the Court will deny the defendant's

motion for production of minutes and transcripts of grand jury testimony concerning the October 1989 drive-by shooting. There is simply not enough on this record to warrant an invasion of the traditional secrecy of grand jury proceedings. In short, the defendant has not met his burden under Fed.R.Crim.P. 6(e)(3)(C)(i) of making "a strong showing of particularized need for grand jury materials." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983).

*v. Grandstaff,* 813 F.2d 1353, 1357 (9th Cir.) (finding probable cause to search for stolen property despite five-month delay), *cert. denied,* 484 U.S. 837, 108 S.Ct. 119, 98 L.Ed.2d 78 (1987). Moreover, a six-month delay is less significant when, as here, the search warrant lists items innocent on their face (an article of clothing and documents showing associations between certain people) as opposed to *per se* inculpatory items —drugs, guns, stolen property, or other contraband—that probably would remain in a suspect's home for only a short period of time. *See United States v. Dozier,* 844 F.2d 701, 707 (9th Cir.) (finding probable cause to search for documentary records despite five-and-one-half-month delay), *cert. denied,* 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988); *United States v. Jacobs,* 715 F.2d 1343, 1346 (9th Cir.1983) (finding probable cause to search for articles of clothing despite three-and-one-half-month delay); *United States v. Brinklow,* 560 F.2d 1003, 1005–06 (10th Cir.1977) (finding probable cause to search for radio equipment and documents despite eleven-month delay), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978). In addition to the foregoing, it is significant that, although the face of the affidavit noted the passage of time, a neutral detached judicial officer nevertheless made a probable cause finding.[5]

■ The Court also disagrees with the defendant's argument that the search warrant was so lacking in particularity that it was an invalid "general warrant." The warrant listed the objects of the search as: (i) a black hooded sweat jacket and (ii) records, telephone numbers, and mail matter which show association between identified individuals. While the warrant's description of the latter group of items may have been somewhat broad, courts should construe a warrant in conjunction with the attached supporting affidavit. *See In re Search Warrant Dated July 4, 1977,* 572 F.2d 321, 326 (D.C.Cir.1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978); *United States v. Weinstein,* 762 F.2d 1522, 1531–32 (11th Cir.1985), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986); *United States v. Cantu,* 774 F.2d 1305, 1308 (5th Cir.1985) (per curiam), *cert. denied,* 479 U.S. 847, 107 S.Ct. 169, 93 L.Ed.2d 106 (1986); *United States v. Johnson,* 690 F.2d 60, 64–65 (3d Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983). In this case, the warrant referred to Officer Parisi's attached affidavit, which adds sufficient detail by describing one particular offense, identifying the four suspects by name and address, and making it clear that the objects of the search would show an association between these four individuals. *Compare United States v. Spilotro,* 800 F.2d 959, 961 (9th Cir.1986) (warrant was not sufficiently particularized; it authorized search for various items "which are evidence of violations of [specific criminal code provisions] and which are or may be" (1) evidence of commission of criminal offense, (2) contraband or fruits of crime, or (3) instrumentalities of a criminal offense). Thus, when read in conjunction with the supporting affidavit, the warrant in this case clearly authorized the police to search only for evidence relating to the drive-by shooting and was at least as specific as the search warrant upheld in *Andresen v. Maryland,* 427 U.S. 463, 479–82, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627 (1976) (approving search warrants listing particular documents and concluding with phrase "together with other fruits, instrumentalities and evidence of crime at this [time] unknown").

■ In any event, even assuming *arguendo* that the defendant's no-probable-

---

**5.** The defendant contends that the affidavit not only was stale but also was flawed because it failed to include background information about the reliability of the source of the information and neglected to mention Williams' criminal record. However, the government correctly points out that in this case, because the information was supplied by an eyewitness/victim as opposed to an anonymous tip or a confidential informant, the credibility and reliability requirements are relaxed. *See United States v. McEachin,* 670 F.2d 1139, 1143 (D.C.Cir.1981) (credibility determination "should be applied with some measure of leniency in cases involving first-hand information from allegedly disinterested persons"); *see also United States v. Laws,* 808 F.2d 92, 101–02 & n. 76 (D.C.Cir.1986) (citing *McEachin* ).

cause and overbreadth arguments were sufficient to invalidate this search warrant after the fact, the "good faith" exception to the exclusionary rule of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and its progeny forecloses suppression of the physical evidence seized from the defendant's apartment. The *Leon* Court unequivocally held that the exclusionary rule is designed to "alter the behavior of individual law enforcement officers or the policies of their departments," *id.* at 918, 104 S.Ct. at 3418, and not to prevent judicial officers from making erroneous probable cause determinations in approving warrant applications, *see id.* at 916–17, 104 S.Ct. at 3417–18. *See also Massachusetts v. Sheppard*, 468 U.S. 981, 990–91, 104 S.Ct. 3424, 3428–29, 82 L.Ed.2d 737 (1984). Here, while Officer Parisi could have drafted a better search warrant and supporting affidavit, he did everything else that reasonably could be expected of him under the Fourth Amendment: he showed the supporting affidavit to an Assistant United States Attorney, who approved it, and then he presented the search warrant and supporting affidavit to a detached, neutral Superior Court Judge, who made a probable cause determination and authorized the search. *See Sheppard*, 468 U.S. at 989, 104 S.Ct. at 3428. In short, "[u]nder these circumstances, [Officer Parisi's] reliance on the [judge's] determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." *Leon*, 468 U.S. at 926, 104 S.Ct. at 34.[6]

### B. Defendant's Incriminating Statements

■ Because the foregoing rulings dispose of the defendant's Fourth Amend-

ment-based argument for suppression of his incriminating statements, the only remaining issue is whether the defendant's statements should be suppressed to remedy alleged violations of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). First, the defendant's initial statements to the police about keeping his belongings in a closet and dresser were not the result of a "custodial interrogation." *See Beckwith v. United States*, 425 U.S. 341, 346, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976) ("In subsequent decisions, the Court specifically stressed that it was the *custodial* nature of the interrogation which triggered the necessity for adherence to the specific requirements of its *Miranda* holding." (emphasis in original)). When the police officers entered the defendant's apartment and initially asked him questions, the defendant was not formally placed under arrest. Nor is there any indication on this record that the defendant was "significantly deprived of his freedom of action," *California v. Beheler*, 463 U.S. 1121, 1123, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983) (per curiam); *see also United States v. Eide*, 875 F.2d 1429, 1437 (9th Cir.1989), or that the circumstances of the questioning were inherently coercive, *see Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624; *Beckwith*, 425 U.S. at 347, 96 S.Ct. at 1616. Thus, because the defendant made his initial statements voluntarily and before *Miranda*'s requirements were triggered, these statements are admissible.

■ The next group of statements—the defendant's admissions that the shotgun and the drugs found in the closet and the safe containing the pistol and more drugs belonged to him—are also admissible. Although the defendant was clearly under

---

**6.** Nor do any of *Leon*'s four exceptions to the "good faith" exception apply here: (1) this Court has already ruled on the *Franks* issue that the supporting affidavit did not contain material false statements made intentionally or with reckless disregard for the truth; (2) there is no indication that the issuing Superior Court Judge in this case abandoned his role as a neutral and detached judicial officer in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) Officer Parisi's supporting affidavit is not so

devoid of indicia of probable cause that official belief in its existence was entirely unreasonable, as contemplated by *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part); and (4) the warrant was not so facially deficient that the executing officers could not reasonably have presumed it to be valid. *See Leon*, 468 U.S. at 923, 104 S.Ct. at 3421 (listing four instances in which good faith exception to exclusionary rule does not apply).

arrest at that point and subjected to a "custodial interrogation," he made these statements after being advised of his *Miranda* rights.[7] Moreover, the Court holds that the government has met its burden of proving by a preponderance of the evidence, *see Colorado v. Connelly*, 479 U.S. 157, 168–69, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986); *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972), that the defendant understood and knowingly and voluntarily waived his *Miranda* rights, *see North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979) (courts must presume that defendant did not waive his *Miranda* rights, but express written or oral waiver is not necessary and sometimes waiver can be inferred from defendant's actions and words). The record reflects that this defendant had been arrested and received *Miranda* warnings several times before his arrest in this case, *see* Motions Hearing Tr. at 40–42, and there is nothing to indicate that the defendant, having had a tenth-grade education, was not sufficiently intelligent or educated to understand his rights, *see United States v. Yunis*, 859 F.2d 953, 967 (D.C.Cir.1988) (citing several cases finding waivers of *Miranda* rights by defendants with fifth-grade educations, low IQ's, and/or limited vocabularies).

In attempting to rebut the government's waiver argument, the defendant greatly exaggerates the coercive impact of the police officer's statement that he was lucky because the Vice Squad might have arrested his mother. While the defendant may have been understandably concerned about his mother's welfare, that concern, if any, is far from sufficient under the totality of the circumstances in this case to undermine this Court's waiver ruling, especially in view of the significantly more coercive situation that did not deter the *Yunis* court from finding a *Miranda* waiver. *Compare Yunis*, 859 F.2d at 960–66 (*reversing* district court's suppression of Lebanese defendant's statements and holding that defendant knowingly and voluntarily waived his *Miranda* rights, even though he was suffering from wrist injuries and seasickness, was kept in a hot and cramped detention room, and was not familiar with American legal culture).

█ The defendant's contention that his first statement at the police station—that the crack seized from his apartment consisted of $20 rocks and not $50 rocks—should be suppressed is also without merit. The record is clear that the defendant, while being processed, blurted this statement out in response to another police officer's inquiry directed not at the defendant but at Officer Parisi. Motions Hearing Tr. at 44. In this instance, there was simply a discussion between two police officers in the defendant's presence, which is insufficient to satisfy *Miranda*'s express or implied interrogation prerequisite. *See Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The *Innis* Court concluded that "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent," *Id.* at 300, 100 S.Ct. at 1689, after noting that " '[i]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself," *id.* Because the police officers' discussion of the value of the drugs in this case was not "words or actions ... that they *should have known* were reasonably likely to elicit an incriminating response," *id.*, 446 U.S. at 302, 100 S.Ct. at 1690 (emphasis in original), the defendant's statement about the value of the rocks was simply a voluntary, spontaneous utterance that does not warrant exclusion.

█ As for the defendant's final statement—the admission that the safe and its contents belonged to him—the government concedes and this Court agrees that it is

---

**7.** As the factual background section of this Opinion indicates, the Court has resolved the dispute between the government's and the defendant's version of the chronology of events by making a credibility determination in the government's favor and finding that the police advised the defendant of his *Miranda* rights before the defendant made this group of statements.

inadmissible in the government's case-in-chief. This statement must be excluded because the police officers obtained it by improperly continuing to question the defendant after he had executed a police form and invoked his right not to answer any questions without having an attorney present. *See Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981) ("we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation").

 Finally, to make the record absolutely clear, the Court makes a specific voluntariness finding as to *all* of the defendant's statements. In short, after carefully considering the totality of the circumstances surrounding the police questioning during the execution of the search warrant and the defendant's subsequent arrest, the Court concludes that none of the defendant's statements were the product of "police overreaching" or "coercive police conduct." *Colorado v. Connelly,* 479 U.S. 157, 163–64, 107 S.Ct. 515, 519–20, 93 L.Ed.2d 473 (1986); *compare Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (excluding defendant's statements that police obtained by interrogating defendant in intensive care unit while he was depressed almost to point of coma, in great pain, and encumbered by tubes, needles, and breathing apparatus); *Beecher v. Alabama,* 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967) (per curiam) (excluding confession that police obtained by pressing loaded gun to defendant's face and firing rifle next to his ear); *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) (excluding confessions that police obtained by interrogating defendant incommunicado for sixteen days). Moreover, because this Court has found that even the defendant's last admission about the safe and its contents belonging to him was voluntary, that statement, while excluded from the government's case-in-chief, is nevertheless admissable to impeach or rebut the defendant's testimony if he elects to take the witness stand. *See Oregon v. Haas,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

### III. Conclusion

The Court holds that the defendant's motion to suppress physical evidence and incriminating statements and his motion for production of grand jury minutes and transcripts must be denied, except that the defendant's last statement to the police, his admission that the safe and the gun and drugs recovered from the safe belonged to him, must be excluded from the government's case-in-chief. However, the government is not precluded from using this voluntary statement for impeachment or rebuttal if the defendant decides to testify on his own behalf.

The Court will issue an Order of even date herewith in accordance with the foregoing Opinion.

### ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 31 day of October, 1990,

ORDERED that the defendant's motion to suppress physical evidence shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the defendant's motion for production of minutes and transcripts of grand jury testimony shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the defendant's motion to suppress incriminating statements shall be, and hereby is, DENIED, except that the defendant's last statement at the police station—the admission that the safe and its contents belonged to him—shall be, and hereby is, EXCLUDED from the government's case-in-chief.