United States Court of Appeals
Fifth Circuit

**F I L E D**

June 26, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-70042

_____

JEFFERY LEE WOOD,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Texas

_____

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

This case involves a 28 U.S.C. § 2254 petition filed by Jeffery Wood, a Texas death row inmate. The district court dismissed the petition in its entirety, but granted Wood a certificate of appealability ("COA") on his claims: (1) that the state trial court violated his Sixth Amendment right to self-representation by denying his request to proceed pro se during the punishment phase of his trial; and (2) in the alternative, that his trial counsel were ineffective for failing to present any mitigating evidence during the punishment phase of Wood's trial.[1]

_____

[1]Wood makes several additional arguments in connection with his ineffective assistance of counsel claim, specifically that: (1)

1

We conclude that the state court's decision denying Wood's claims was not contrary to, and did not involve an unreasonable application of, clearly established federal law, and we therefore AFFIRM.

## I.  Background

On January 22, 1996, petitioner Jeffery Wood was indicted in Texas for capital murder in connection with a shooting that occurred during a convenience store robbery.  Prior to trial, the state court conducted two competency hearings to determine whether Wood was competent to stand trial.  At the conclusion of the first, a jury determined that Wood was not competent to stand trial at that time, but would likely attain competency in the foreseeable future.  After that hearing, Wood was committed to a state psychiatric facility.  The facility's staff later informed the court that it believed that Wood was competent to stand trial.  At that point, the trial court held a second competency hearing, at which the jury determined that Wood was competent to stand trial.

Wood was convicted of capital murder by a jury on February 25, 1998.  Immediately after the jury returned its guilty verdict, Wood

---

because counsel failed to present any evidence during the punishment phase, the court should presume that Wood was prejudiced by their ineffective assistance, see United States v. Cronic, 466 U.S. 648 (1984); and (2) that counsel should have requested a competency evaluation during the punishment phase of the trial. The district court found that these additional arguments had not been fairly presented to the state courts and were therefore procedurally defaulted, but it granted Wood a COA on these related claims.

2

informed the trial judge that he wanted to terminate his lawyers and proceed <u>pro</u> <u>se</u> during the punishment phase of his trial.[2]  Wood said that he was not dissatisfied with counsel's representation, but explained that he did not want to present any evidence during the punishment phase or cross-examine any of the state's witnesses. Wood further stated that he did not want to force his lawyers to sit and do nothing on his behalf and that, in any event, he did not believe that they would comply with his wishes.

The trial court denied Wood's motion.  The court first informed Wood that he controlled the conduct of his attorneys: "Mr. Wood, you control your defense.  You know, attorneys ultimately are going to have to follow your lead as to what you want to do.  They can't overrule you."  The court then stated that it was denying Wood's motion to proceed <u>pro</u> <u>se</u> because it wanted to ensure that he was able to understand the sentencing proceedings:

> I'm going to deny your request to represent yourself in the second phase.  The issue, especially the death penalty issue, is so intense from both an emotional standpoint and a legal standpoint, that I don't feel comfortable with you understanding all the concepts of what's going on and not having legal counsel that you can rely on.
>
> . . . .
>
> But I'm going -- I'm going to tell you once

---

[2]The following colloquy was reprinted in the district court's opinion.  <u>See</u> <u>Wood v. Dretke</u>, 386 F. Supp. 2d 820 (W.D. Tex. 2005).

3

again that you need to direct your attorneys on how you want them to prepare your defense or how you want them to react to evidence and then rely on their expertise in doing what you want to do, but I'm going to deny your request to fire your attorneys.

After the court ruled, defense counsel expressed concern that the ruling put them "on the horns of a dilemma" about whether or not to follow their client's instructions, since Wood had instructed them to not cross-examine any of the state's witnesses and to not call any defense witnesses during the punishment phase. The trial judge acknowledged the difficulty of the situation, but reminded counsel that "it's your client and your call whether or nor [sic] you want to bring [defense witnesses] or cross-examine anybody. I can't tell you to do or not to do it."[3] During this exchange, the trial court explained in further detail its reasons for denying Wood's motion to proceed pro se:

> [I]f the Defendant would have wanted to do his own defense and had theories about how he wanted to conduct his own defense, I think I would have to go through a very slow process of determining whether or not he had voluntarily decided to waive his right to counsel and had the ability to go ahead and present his own defenses, but it appears, kind of reading through the lines, that Mr. Wood wants to not put – to not defend himself.
>
> . . . .
>
> And if he doesn't want to defend himself, I want him to have counsel to tell him what that

[3]The court permitted counsel to document Wood's instructions to them by having Wood speak to them with a court reporter present. Counsel did this on at least two occasions.

4

means and to explain to him what his options are if he doesn't want to examine a witness, what that means by not cross-examining or calling a witness, and so I want him to have attorneys there telling him what everything means, every step when you're making this decision . . . .

I'm going to stay with my prior ruling of not allowing Mr. Wood to represent himself and keeping you and Mr. Whitlow on the case, but I would welcome you to take a look at this issue and see if you can find any precedent for it in the next two or three days.

Several days later, Wood renewed his request to proceed pro se by written motion.  Shortly before the punishment phase of the trial was to begin, the court addressed, and denied, Wood's renewed motion.  After eliciting Wood's admission that counsel were cooperating with his directives, the court again explained its ruling:

Based on the testimony I've heard about your educational background and your experience with the criminal justice system, I'm of the opinion that you still need to have counsel with you that you could ask questions of and make sure that you know what's going on and that you're not taken advantage of by this proceeding, so I note that you have requested to represent yourself and I'm going to deny that request and continue these gentlemen as your counsel and you have the advantage of calling on them whenever you want to call on them during the punishment phase of trial.

The trial court does not appear to have considered the timing of Wood's motion as a factor in denying his request to proceed pro se.

Throughout the punishment phase of the trial, Wood's counsel complied with his instructions.  They did not cross-examine any of

5

the state's punishment-phase witnesses, and the defense did not present any evidence of its own. After deliberating for approximately one hour, the jury returned a verdict that: (1) Wood would be a future danger to society; (2) Wood deliberately caused the death of the victim; and (3) there were insufficient mitigating circumstances to warrant a life sentence. Wood was sentenced to death based on those jury findings.

Wood's conviction and sentence were affirmed on direct appeal. In March 2000, Wood filed a state habeas petition asserting some 29 claims for relief. On October 2, 2000, the state trial court denied relief. As is relevant here, the court found that: (1) the trial court did not err in denying Wood's request to proceed pro se because, based on the trial court's "accumulated knowledge" of Wood's circumstances, it "was in an adequate position to make and [sic] meaningful determination on the issue," and because "the request for self-representation was not presented in a timely manner"; and (2) trial counsel did not provide ineffective assistance, in light of Wood's specific and repeated directives that counsel not put on a defense during the punishment phase of the trial. On May 9, 2001, the Texas Court of Criminal Appeals adopted the trial court's findings of fact and conclusions of law and denied relief.[4]

---

[4]Because the Court of Criminal Appeals simply adopted wholesale the habeas trial court's findings and conclusions, we refer only to the "state habeas court" throughout this opinion.

Wood then filed his section 2254 petition with the district court. In a lengthy opinion dated August 24, 2005, the district court dismissed the petition. With respect to Wood's request to proceed pro se, the district court first noted that the state trial court applied an incorrect legal standard when it denied Wood's motions. Wood, 386 F. Supp. 2d at 857. Nevertheless, the district court held that the state habeas court's decision denying Wood relief on this claim was not an unreasonable application of federal law because "the core concerns of Faretta [v. California, 422 U.S. 806 (1975)] were not violated during the punishment phase of petitioner's trial." Id. at 858-60. Relying on McKaskle v. Wiggins, 465 U.S. 168 (1984), the district court reasoned that, under the circumstances, Wood's lawyers "served as little more than standby counsel for petitioner during the punishment phase" of the trial, and that the state habeas court could therefore have reasonably concluded that this arrangement did not run afoul of Faretta's "core" concern, i.e., that Wood be able to maintain control over the conduct of his defense. Wood, 386 F. Supp. 2d at 858-60. In light of this disposition, the district court did not reach the state habeas court's additional finding that Wood's motion to proceed pro se was untimely. Id. at 860 n.72.

With respect to Wood's ineffective assistance of counsel claims, the district court found that two of Wood's arguments — that he was entitled to a presumption of prejudice under the

7

Supreme Court's decision in Cronic, see 466 U.S. at 659-62, and that counsel were ineffective for failing to request a competency evaluation during the punishment phase of the trial — were not exhausted before the state courts and were therefore procedurally defaulted. Wood, 386 F. Supp. 2d at 839-48, 863-65. As for Wood's exhausted claim — that his trial attorneys were ineffective because they complied with his instructions and failed to present any mitigating evidence during the punishment phase — the district court found that Wood failed to establish that he was prejudiced by counsel's failure to put on a mitigation case. Because Wood had not shown prejudice, the district court declined to decide whether counsel's performance was deficient. Id. at 849-53.

## II. Standard of Review

This court reviews the district court's findings of fact for clear error and its legal conclusions de novo, applying the same standards as the district court. See, e.g., Thompson v. Cain, 161 F.3d 802, 805 (5th Cir. 1998).

Wood's application for section 2254 relief is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal habeas court may not grant relief to a prisoner serving a state sentence with respect to any claim adjudicated on the merits in a state court unless the state court ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

8

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). A state decision is "contrary to" clearly established federal law if the state court applies a rule that is "substantially different from" or "contradicts" governing Supreme Court precedent, or if the state court reaches a decision opposite that reached by the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A decision involves an "unreasonable application" of federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. An "unreasonable application" of federal law must be something more than a mere incorrect application. Id. at 410-11 ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

The state court's findings of fact are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  Wood's Faretta Claim

Under the principles announced by the Supreme Court in Faretta v. California, 422 U.S. 806, 835-36 (1975), a competent criminal

9

defendant has a Sixth Amendment right to represent himself at trial if he waives his right to counsel, and a trial court cannot deny the defendant's motion to proceed pro se on the ground that the defendant lacks sufficient knowledge or understanding of the law. The Faretta right is not, however, without limitation. The exercise of the right to self-representation is contingent on the defendant's knowing and intelligent waiver of the right to be represented by counsel. See id. at 835.[5] The Faretta court also noted that a court may terminate the right to self-representation where the defendant fails to abide by courtroom rules and/or engages in obstructionist conduct. Id. at 834 & n.46. Moreover, a trial court can appoint stand-by counsel to assist the defendant (even over the defendant's objection), so long as stand-by counsel does not unduly impinge on the defendant's self-representation. Id. at 834 n.46; McKaskle, 465 U.S. at 174-79. Finally, a trial court need not permit a defendant to proceed pro se where the defendant's motion to do so is untimely. See, e.g., Martinez v. Court of Appeal, 528 U.S. 152, 162 (2000) (noting that "most courts" require defendant to assert right to self-representation "in a timely manner").

In this case, the state habeas court provided two reasons for

---

[5]In Godinez v. Moran, 509 U.S. 389, 399-402 (1993), the Supreme Court held that the standard of competency for waiving the right to counsel is the same as the standard for determining whether a defendant is competent to stand trial.

its denial of Wood's Faretta claim: (1) that the trial court had "accumulated knowledge of [Wood's] circumstances" and "was in an adequate position to make and [sic] meaningful determination of the issue"; and (2) that Wood's motion to proceed pro se was untimely. The federal district court held that, although the trial court and the state habeas court applied an incorrect substantive legal standard when considering Wood's motion to represent himself, the decision to deny the motion was not an unreasonable application of federal law. The district court did not reach the state habeas court's additional finding that Wood's motion was untimely. Because we hold that the state habeas court did not unreasonably apply federal law when it held that Wood's motion was untimely, we do not reach its decision on the substance of Wood's claim.

As noted above, courts have discretion about whether to grant a defendant's motion to proceed pro se when the motion is untimely. See, e.g., Martinez, 528 U.S. at 162; United States v. Davis, 269 F.3d 514, 520 (5th Cir. 2001) ("The district court was not obliged to honor Davis's mid-trial request to represent himself.") (citing Moreno v. Estelle, 717 F.2d 171, 176 (5th Cir. 1983)); see also Haynes v. Cain, 298 F.3d 375, 384 (5th Cir. 2002) (en banc) (Dennis, J., concurring). In this case, Wood did not move to proceed pro se until after the jury had already returned a guilty verdict against him, immediately before the sentencing phase of his trial, and the trial court therefore had the discretion to deny the

11

motion.  Although the trial court did not base its decision on the untimeliness of Wood's motion,[6] the last reasoned state court decision — the decision of the state habeas court — did.  Because no decision of the Supreme Court obligates state courts to permit self-representation when the defendant fails to invoke his <u>Faretta</u> right in a timely manner, we are compelled to find that the state habeas court's holding that Wood was not entitled to relief because his motion was untimely was neither contrary to, nor an unreasonable application of, federal law.  <u>See</u> <u>Marshall v. Taylor</u>, 395 F.3d 1058, 1060-62 (9th Cir.) (rejecting <u>Faretta</u> claim where trial court denied motion for self-representation for impermissible reason, but state appellate court found that motion was untimely), <u>cert. denied</u>, 126 S. Ct. 139 (2005).

## IV.  Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must ordinarily establish both that counsel's performance was objectively deficient and that the defendant was prejudiced by counsel's deficient performance.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  Counsel's performance is evaluated against an objective standard of reasonable performance based on accepted professional norms.  <u>See</u> <u>Rompilla v. Beard</u>, 545 U.S. 374, 380

---

[6]Indeed, the trial court appears to have denied Wood's motion for the impermissible reason that the court did not believe that Wood was capable of adequately representing himself without counsel.

12

(2005).  To show prejudice, a petitioner must establish that but for counsel's performance, there is a reasonable probability that the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694.  To assess prejudice in the capital sentencing context, the court "reweigh[s] the evidence in aggravation against the totality of the available mitigating evidence."  Wiggins v. Smith, 539 U.S. 510, 534 (2003).

The district court found that Wood had exhausted his state remedies with respect to only one of his three, related ineffective assistance of counsel claims — his primary claim that trial counsel were ineffective for following his instructions and not presenting any mitigating evidence during the punishment phase of the trial.[7] The state habeas court rejected this claim, holding that Wood's counsel did not render deficient performance.  The district court denied relief on the ground that Wood was not prejudiced by any deficient performance because the mitigating evidence that Wood claims his counsel should have presented was "extremely meager" in comparison to the prosecution's punishment-phase evidence.  See

---

[7]It is of note that Wood argues only that counsel were ineffective for failing to present mitigating evidence; he does not claim that counsel failed to conduct a sufficient investigation for mitigation evidence.  See, e.g., Blanco v. Singletary, 943 F.2d 1477, 1502 (11th Cir. 1991) ("[A] defendant's desires not to present mitigating evidence do not terminate counsel's responsibilities during the sentencing phase of a death penalty trial:  'The reason lawyers may not 'blindly follow' such commands is that although the decision whether to use such evidence is for the client, the lawyer first must evaluate potential avenues and advise the client of those offering potential merit.'") (quoting Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir. 1986)).

13

Wood, 386 F. Supp. 2d at 850-52.[8]

Wood is not entitled to relief on this claim. Neither the Supreme Court nor this court has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions to not present evidence. In fact, this court has held on several occasions that a defendant cannot instruct his counsel not to present evidence at trial and then later claim that his lawyer performed deficiently by following those instructions. In Autry v. McKaskle, 727 F.2d 358 (5th Cir. 1984), the defendant prevented his attorney from presenting any mitigating evidence during the punishment phase of his capital trial. A panel of this court rejected Autry's claim that counsel was ineffective for heeding his instructions: "If Autry knowingly made the choices, [his lawyer] was ethically bound to follow Autry's wishes." Id. at 362;[9] see also Arnold v. Cockrell, 273 F.3d 1094 (5th Cir. 2001) (unpublished). Moreover, other decisions of this court have rejected similar claims. See Nixon v. Epps, 405 F.3d 318, 325-26 (5th Cir. 2005) (finding that counsel was not

---

[8]The district court did not determine whether Wood had established deficient performance, but it did note what it considered to be an "obvious conflict between the plain language of Strickland" and the state's reading of several Fifth Circuit cases that state that a defendant cannot prevent his counsel from presenting a particular defense and later claim that counsel was ineffective for having failed to present that defense. Id. at 854.

[9]The Autry court also rejected the defendant's claim that counsel was required to request a competency hearing before agreeing to comply with the client's decisions. Id.

14

ineffective for failing to present additional mitigating evidence over client's objection; "A defendant cannot block his counsel from attempting one line of defense at trial, and then on appeal assert that counsel was ineffective for failing to introduce evidence supporting that defense."); Roberts v. Dretke, 356 F.3d 632, 638 (5th Cir. 2004) (noting that defendant may not obstruct attorney's efforts, then claim ineffective assistance of counsel); Dowthitt v. Johnson, 230 F.3d 733, 748 (5th Cir. 2000) (finding that counsel was not ineffective for failing to call family members during punishment phase where defendant stated that he did not want family members to testify).[10]

The record in this case reflects that Wood clearly and repeatedly instructed his trial counsel to sit idly throughout the sentencing phase of his trial. On these facts, the state court's decision holding that Wood could not show that counsel performed deficiently was not an unreasonable application of Strickland.[11]

Wood's remaining ineffective assistance of counsel claim is

---

[10]Cf. Schriro v. Landrigan, 127 S. Ct. 1933, 1940–41 (2007) (stating that, if defendant instructed counsel not to present mitigating evidence, "counsel's failure to investigate further could not have been prejudicial under Strickland"); Amos v. Scott, 61 F.3d 333, 348–49 (5th Cir. 1995) (denying ineffective assistance claim for want of prejudice where defendant "strongly opposed" presenting any witnesses during punishment phase of trial).

[11]Because Wood's claim fails on the deficient performance prong, we do not consider Wood's additional claim (which the district court dismissed as unexhausted) that counsel's performance should be presumed to be prejudicial under United States v. Cronic, 466 U.S. 648 (1984).

15

that counsel should have sought a mid-trial competency evaluation to determine whether Wood was competent to instruct his attorneys to not present mitigating evidence. The district court dismissed this claim as unexhausted. Even assuming that the claim was properly exhausted, however, Wood is not entitled to relief, as counsel did not perform deficiently by failing to request a competency evaluation.

The Supreme Court has held that a defendant who is competent to stand trial is also competent to waive the right to have the assistance of counsel. See Godinez, 509 U.S. at 399-402. It follows logically that this court cannot impose any higher, or more stringent, standard of competency where a defendant who is represented by counsel wishes to override counsel's advice. See Arnold, 273 F.3d 1094, at *1 (unpublished) ("Because Arnold was competent to stand trial and therefore to waive his right to counsel, he was, a fortiori, competent to override the advice of counsel.") (citing Coleman v. Mitchell, 244 F.3d 533, 545 (6th Cir. 2001)).

In this case, the trial court expressly determined that Wood was competent to stand trial at a competency hearing held shortly before trial. The only evidence that Wood offers as support for his claim that he was not competent is an affidavit from one of his trial counsel that states, in pertinent part:

> I felt Mr. Wood's request to [present no
> defense at the penalty phase] was an

16

> irrational request. Indeed, it was my personal belief that Mr. Wood was incompetent to make a rational, well thought out choice on how to best conduct the sentencing phase of his trial.

Wood's allegations do not make out a claim for relief. In Autry, this court held that a competency hearing is not automatically required before counsel can accept a client's decision to not present evidence during the sentencing phase of a capital trial. Autry, 727 F.2d at 362 ("It does not follow for us that refusing to plead for mercy after being convicted of two execution-style slayings will alone so implicate a defendant's competency as to render his counsel constitutionally ineffective for not seeking an inquiry into competency before abiding the client's decision."); see also Moran, 509 U.S. at 401 n.13 (stating that a court is not "required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his right to counsel. As in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence."). In addition, counsel's belief that the defendant's decision is ill-advised is not sufficient to trigger a duty to inquire into the defendant's competence. Autry, 727 F.2d at 363 ("Carver was not ineffective in not seeking a competency hearing before abiding Autry's decision, absent a more substantial reason to suspect incompetence than the lawyer's view that Autry's decision was injurious to the case."). The affidavit

17

from Wood's counsel in this case simply does not speak to the relevant competency standard of whether Wood was competent to stand trial. Rather, it says only that counsel thought that Wood was not competent to decide how to best present a penalty-phase defense. Moreover, Wood has not pointed to any other facts that would suggest that he was not competent to stand trial. Accordingly, Wood has not presented any evidence that would call his competence into question or show that counsel performed deficiently by failing to ask for an additional competency evaluation, and he is therefore not entitled to relief.

## V. Conclusion

For the reasons stated above, we AFFIRM the judgment of the district court dismissing Wood's 28 U.S.C. § 2254 petition.