# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-70020

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2016

Lyle W. Cayce
Clerk

JOHN H. RAMIREZ,

      Petitioner - Appellant

v.

WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

      Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:12-CV-410

Before KING, CLEMENT, and OWEN, Circuit Judges.

KING, Circuit Judge:*

    Petitioner–Appellant John Ramirez was convicted of capital murder in Texas state court and sentenced to death. After his conviction and sentence were affirmed on direct review, Ramirez unsuccessfully pursued state habeas relief asserting a number of constitutional claims, including violations of his due process rights, right to a public trial, and ineffective assistance of counsel.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-70020

State habeas courts denied him relief, finding that his claims were either procedurally defaulted or without merit. Ramirez filed for federal habeas relief thereafter on the same claims. The district court denied Ramirez relief and denied his application for a Certificate of Appealability (COA). Ramirez now seeks a COA from this court. Because we find that reasonable jurists would not debate the district court's decision, we DENY Ramirez's application for a COA.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner–Appellant John Ramirez's petition for relief stems from his 2008 trial and sentencing for capital murder. We recount the details of his crime, conviction, and trial to the extent that they are pertinent to Ramirez's present application for a COA. On the night of July 19, 2004, Pablo Castro, a clerk who worked the night shift at a Times Market convenience store in Corpus Christi, Texas, exited the store to empty the trash around closing time. As Castro entered the parking lot of the convenience store, he was confronted by Ramirez and Angela Rodriguez. As recounted later by Christina Chavez—Ramirez's confederate that night and later co-defendant—Ramirez, Rodriguez, and she had spent the previous few days using drugs and agreed to rob someone in order to obtain money for more drugs. The group drove around Corpus Christi looking for someone to rob until they pulled into the Times Market parking lot where they found Castro. Ramirez confronted Castro and wrestled with him before stabbing Castro 29 times with a knife. After Castro fell to the ground, Rodriguez and Ramirez searched Castro's pockets for money, robbed him of $1.25, and left the scene. The group went on to commit another aggravated robbery and an attempted aggravated robbery later that night. Castro, meanwhile, died in the parking lot of Times Market from his knife wounds. Chavez and Rodriguez were apprehended soon after by police, but

2

No. 15-70020

Ramirez eluded a police manhunt until he was finally apprehended near the Mexican border on February 20, 2008.

The State of Texas charged Ramirez with violating Texas Penal Code § 19.03(a)(2) by intentionally or knowingly causing Castro's death while in the course of committing or attempting to commit robbery. The State's case against Ramirez was heard in the 94th District Court for Nueces County, in front of Judge Bobby Galvan. The trial court appointed Edward F. Garza and John Grant Jones as trial counsel for Ramirez on February 29, 2008. Ramirez's jury trial began on October 22, 2008. At Ramirez's trial, his defense counsel did not contest Castro's murder but contended that the evidence did not show that Ramirez was responsible for the underlying robbery. On this point, the prosecution introduced evidence of the other robberies committed after Castro's murder. The jury ultimately found Ramirez guilty of Castro's murder and the underlying robbery, convicting Ramirez of capital murder on December 5, 2008.

In accordance with Texas Code of Criminal Procedure Article 37.071, § 2, the court then held a separate punishment hearing where the jury was to determine whether or not Ramirez would receive the death penalty. At the first day of sentencing on December 5, 2008, defense counsel made an opening statement and called Ramirez's father as a mitigation witness. However, on the second day of sentencing on December 8, 2008, defense counsel informed the court that Ramirez had directed counsel not to present any further mitigation evidence, not to call any further witnesses, and not to argue against the death penalty. Defense counsel informed the court that he believed Ramirez had thought out this request carefully and called Dr. Troy Martinez, a clinical psychologist appointed to assist defense counsel, to testify that Ramirez's request had been knowingly and voluntarily made. The defense then rested its mitigation case. On December 8, 2008, the jury answered the

No. 15-70020

special issues presented in Ramirez's punishment phase, and Ramirez received a death sentence.

Ramirez appealed his state conviction, through separate appellate counsel, to the Texas Court of Criminal Appeals, which affirmed his conviction in an unpublished decision on March 16, 2011. *See Ramirez v. State*, No. AP-76100, 2011 WL 1196886, at *19 (Tex. Crim. App. Mar. 16, 2011). Ramirez's conviction became final after he failed to file a petition for certiorari to the United States Supreme Court and the time for filing a petition expired. Concurrent with his direct criminal appeal, Ramirez first filed a state application for a writ of habeas corpus on June 17, 2010. In his application, Ramirez argued that there were a number of errors during the course of his trial and sentencing.[1] Ramirez alleged: (1) his due process rights were violated when the parties agreed to 52 juror strikes in his absence at pre-trial voir dire on November 4, 2008; (2) his right to a public trial was violated because

---

[1] Under Texas' procedure for death penalty cases, state habeas review functionally runs concurrent to direct appellate review of a conviction imposing the death penalty:

> Sec. 4. (a) An application for a writ of habeas corpus, returnable to the court of criminal appeals, must be filed in the convicting court not later than the 180th day after the date the convicting court appoints counsel under Section 2 or not later than the 45th day after the date the state's original brief is filed on direct appeal with the court of criminal appeals, whichever date is later.

> (b) The convicting court, before the filing date that is applicable to the applicant under Subsection (a), may for good cause shown and after notice and an opportunity to be heard by the attorney representing the state grant one 90-day extension that begins on the filing date applicable to the defendant under Subsection (a). Either party may request that the court hold a hearing on the request. If the convicting court finds that the applicant cannot establish good cause justifying the requested extension, the court shall make a finding stating that fact and deny the request for the extension.

> (c) An application filed after the filing date that is applicable to the applicant under Subsection (a) or (b) is untimely.

Tex. Code Crim. Proc. Ann. art. 11.071, § 4.

members of the public were not allowed to enter the central jury room during jury selection; (3) his due process and fair trial rights were violated when he was shackled at trial and at sentencing; (4) trial counsel rendered ineffective assistance by failing to probe the jurors regarding their views on the death penalty; (5) trial counsel rendered ineffective assistance by failing to object to Ramirez's absence at voir dire; (6) trial counsel rendered ineffective assistance by not objecting to the exclusion of members of the public; (7) trial counsel rendered ineffective assistance by failing to object to Ramirez's shackling; (8) trial counsel rendered ineffective assistance by failing to object to the introduction of Ramirez's robbery offense under Texas Rule of Evidence 404(b); (9) trial counsel rendered ineffective assistance by failing to present mitigating evidence; and (10) the aggravating factors in Texas's capital sentencing scheme were unconstitutionally vague.

Ramirez's habeas petition was heard in front of the same lower court that convicted him. The state habeas court held hearings on the writ on September 14 and 26, 2011, and October 21, 2011, where it heard evidence from the previous trial, testimony from Ramirez's trial counsel, testimony from a member of the security detail at trial, testimony from Dr. Martinez, and testimony from Dr. Joanne Murphey, a clinical psychologist who testified in support of Ramirez. On January 9, 2012, the state habeas court entered detailed findings of fact and conclusions of law on Ramirez's application and ultimately recommended that the Texas Court of Criminal Appeals deny habeas relief. The state habeas court found that Ramirez's claims as to his absence from jury strikes at voir dire, the exclusion of the public from jury

5

selection, his shackling, and his objection to Texas's capital sentencing scheme were procedurally barred because he failed to raise them at trial by objection.[2]

The state court found that Ramirez's ineffective assistance of counsel claims were all without merit, both as a matter of performance and prejudice. The court found that while trial counsel had not asked jurors about their death penalty views on voir dire, counsel had submitted juror questionnaires designed to elicit these views and that other voir dire questioning was designed to evaluate which jurors could consider mitigation issues. The court found that counsel was not deficient for failing to object to Ramirez's absence during voir dire because Ramirez had already discussed juror strikes with counsel and given counsel permission to use his discretion in making such strikes. The court also stated that counsel did not render deficient performance by failing to object to the alleged exclusion of the public from voir dire because no such exclusion occurred and, in any event, there would have been no strategic advantage from the public's presence. As for Ramirez's shackling, the court noted that there was no evidence that the jury heard the sound of Ramirez's shackles, so counsel could not be held ineffective for failing to object to this fact. The court found that counsel's failure to object to evidence of Ramirez's extraneous offenses was not deficient because counsel had verbal notice that this evidence would be presented and the evidence would have been admissible regardless. And the state habeas court found that defense counsel was not deficient at the mitigation phase. The court found that trial counsel had

---

[2] The state habeas court also cast doubt on the merits of these claims in the alternative. It found that Ramirez was aware of the jury strikes made in his absence and had discussed the matter with trial counsel Ed Garza, giving Garza discretion to make strikes in his absence. The court also found that there was no credible testimony showing that members of the public were excluded from jury selection proceedings. And the court noted that there was no evidence that the jury had ever seen Ramirez shackled or heard the sound of shackles, so the shackles did not have a prejudicial effect on jury.

investigated and developed mitigation evidence but honored Ramirez's instructions not to put on additional mitigation evidence—instructions that appeared to be the product of a coherent and logical decision. While Dr. Joanne Murphey testified that Ramirez could not have rationally waived his right to mitigation, the state habeas court found her opinion not credible.[3] The Texas Court of Criminal Appeals agreed with the findings and conclusions of the lower court in full on October 10, 2012, and denied Ramirez habeas relief. *Ex parte Ramirez*, No. WR-72735-03, 2012 WL 4834115, at *1 (Tex. Crim. App. Oct. 10, 2012).

Ramirez later filed a petition for federal habeas relief, raising the same grounds of error that he had alleged in his state habeas petition. The district court denied Ramirez's petition for federal habeas relief on June 10, 2015, applying the deferential standard of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *Ramirez v. Stephens*, No. 2:12-CV-410, 2015 WL 3629639, at *1 (S.D. Tex. June 10, 2015). The district court found that the state habeas court was not unreasonable in applying federal law when it denied Ramirez's ineffective assistance claims. *Id.* at *12–13. The court found that the remaining claims raised by Ramirez were procedurally barred under Texas's contemporaneous objection rule and that Ramirez failed to show cause or prejudice to avoid procedural default. *Id.* at *5, *12, *25. The court then denied Ramirez a COA. *Id.* at *26. Ramirez timely filed his application for a COA to appeal the district court's decision on October 19, 2015.

---

[3] The state habeas court specifically found that Dr. Murphey was not credible because she had extreme views that no rational person could waive mitigation and that a depressed person could not make a rational decision. The court, however, credited her admission that she had no reason to believe that Ramirez was incompetent to stand trial.

No. 15-70020

## II. STANDARD OF REVIEW

Under AEDPA, particularly 28 U.S.C. § 2253(c),[4] "a state habeas petitioner may appeal a district court's dismissal of his petition only if he first obtains a COA from the district court or the court of the appeals." *Reed v. Stephens*, 739 F.3d 753, 764 (5th Cir. 2014). The COA is therefore "a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)(1)). In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And "[w]hen the district court denies a habeas petition on procedural grounds without

---

[4] This statute provides, in relevant part:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

> (B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).

reaching the prisoner's underlying constitutional claim," a petitioner must show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

When "reviewing [a] request for a COA, we only conduct a threshold inquiry into the merits of the claims [the petitioner] raise[s] in his underlying habeas petition." *Reed*, 739 F.3d at 764 (citing *Miller-El*, 537 U.S. at 336). This "threshold inquiry" is not a "full consideration of the factual or legal bases adduced in support of the claims," but rather "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El*, 537 U.S. at 336. In generally assessing the claims for relief in a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342. And "in a death penalty case, 'any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor.'" *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005) (alteration in original) (quoting *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000)).

Despite our limited inquiry, "[i]n determining whether a COA should be granted . . . this Court must remain cognizant of the deferential standard of review imposed by AEDPA upon the district court in considering habeas petitions." *Id.* (citing *Miller-El*, 537 U.S. at 336–37). Under this deferential standard, a federal court must defer to a state court's adjudication of a claim on the merits unless the state court proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court's decision is contrary to Supreme Court precedent if . . . 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law'; or . . . 'the state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court].'" *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). And "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see id.* ("[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006))).

## III. REASONABLE JURISTS WOULD NOT FIND IT DEBATABLE THAT RAMIREZ'S DUE PROCESS, PUBLIC TRIAL, AND FAIR TRIAL CLAIMS ARE PROCEDURALLY DEFAULTED

In seeking a COA, Ramirez reiterates many of the same arguments that he raised before the state habeas court but that the state habeas court found procedurally defaulted under Texas's contemporaneous objection rule. In particular, Ramirez asserts that his absence from juror strikes at voir dire violated his due process rights under the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment, that he was denied his right to a public trial under Sixth Amendment when the public was excluded from jury selection, and that his due process rights and right to a fair trial under the Sixth Amendment were violated when he was shackled at trial.[5] Given that the district court found the claims procedurally barred, in order to obtain a COA, Ramirez "must make a substantial showing that the district court's procedural ruling was incorrect before we can consider the merits of his underlying . . . claim[s]." *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir.

---

[5] Ramirez does not, however, raise his previous constitutional challenge to Texas's capital sentencing system in seeking a COA.

2007).  For the following reasons, we find that reasonable jurists would not debate the district court's procedural ruling.

As a matter of jurisdiction, federal courts cannot "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  And this "doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."  *Id.* at 729–30.  We have previously held that the Texas contemporaneous objection rule is "an adequate [state] procedural bar" that defaults federal claims on federal habeas review.  *Turner*, 481 F.3d at 301.  However, default under an adequate state procedural rule may still be excused if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  "In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court.'" *McKleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  These objective factors can include "'interference by officials' that makes compliance with the State's procedural rule impracticable, . . . 'a showing that the factual or legal basis for a claim was not reasonably available to counsel', . . . [and] 'ineffective assistance of counsel.'"  *Id.* at 494 (quoting *Murray*, 477 U.S. at 488).  To show actual prejudice, "the petitioner must prove that the errors [he alleges] 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  And a "fundamental miscarriage of justice" will exist

No. 15-70020

where petitioner "establishes that he is 'actually innocent' of the offense for which he was convicted." *Reed*, 739 F.3d at 767 (quoting *Williams v. Thaler*, 602 F.3d 291, 307 (5th Cir. 2010)).

Reasonable jurists would not debate the district court's holding that the Texas contemporaneous objection rule applies to this case and that Ramirez procedurally defaulted the claims listed above under this rule. Furthermore, reasonable jurists would not debate that Ramirez has failed to show excuse for the procedural default. Ramirez does not argue that failure to excuse would result in a "fundamental miscarriage of justice."[6] *Murray*, 477 U.S. at 515. To the extent Ramirez argues that his procedural default is excused in his opening brief, he suggests that there was cause for the default because his trial counsel was ineffective in not raising objections at trial.[7] For the reasons discussed in the next section, Ramirez's trial counsel did not render ineffective assistance and reasonable jurists would not find this debatable. But, even assuming that there was ineffective assistance, reasonable jurists would not debate a lack of prejudice from the errors Ramirez alleges.

Ramirez does not specifically argue how the alleged errors he raises "worked to his actual and substantial disadvantage." *Frady*, 456 U.S. at 170.

---

[6] This argument, in any event, would be foreclosed because Ramirez is not actually innocent of the offense he was convicted of, given Ramirez's own concession at his state trial that he murdered Castro and the other evidence presented by the State at that trial.

[7] Ramirez does not directly confront the issue of procedural default in his opening brief, but he does separately argue ineffective assistance of counsel on the ground that trial counsel failed to preserve objections as to the three defaulted claims. In accordance with the principle that we resolve doubts in a COA in favor of the petitioner in death penalty cases, we treat Ramirez's ineffective assistance argument as an argument as to why there is cause for the default. *See Ramirez*, 398 F.3d at 694. Ramirez's reply brief does confront the issue of procedural default. However, we do not consider any arguments made in Ramirez's reply brief, but not raised in his opening brief, because petitioners waive issues they fail to raise in their opening briefs. *See Pyles v. Johnson*, 136 F.3d 986, 996 n.9 (5th Cir. 1998) ("[B]ecause [petitioner] failed to raise the issue in his opening brief, [petitioner] has waived any challenge to the [issue raised in the reply brief].").

No. 15-70020

And the findings of fact by the state habeas court—to which we defer unless they are "unreasonable," 28 U.S.C. § 2254(d)(2)—demonstrate a lack of prejudice to Ramirez or directly contradict Ramirez's version of the facts on the three defaulted claims. On Ramirez's first claim that his absence from juror strikes at voir dire violated his due process rights, the state habeas court's findings demonstrate that Ramirez's absence was not prejudicial. Trial counsel discussed the juror strikes with Ramirez, who gave his attorneys permission to use their discretion in striking jurors. In light of this, the state habeas court found that "Ramirez's presence at the bench conference in question would not bear a reasonably substantial relationship to his opportunity to defend." On Ramirez's second claim that the public was excluded from voir dire, the court found that Ramirez did not prove this claim by a preponderance of the evidence. In fact, credible testimony from a member of the security detail at Ramirez's trial showed that no member of the public was turned away from voir dire. And on Ramirez's third claim—that he was prejudiced by his shackling at trial—the court found that there was no evidence that the jury at Ramirez's trial ever saw Ramirez shackled or that the sound of his shackles was audible to the jury.[8]

Ramirez does not argue in his opening brief that the state habeas court's findings were "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2),[9] and we cannot hold, on this record, that reasonable jurists would

---

[8] While shackling of a defendant at trial can be a due process violation, the Supreme Court has stated that this violation occurs where there is no "adequate justification" for the shackling and the "shackles . . . will be seen by the jury." *Deck v. Missouri*, 544 U.S. 622, 635 (2005). Our court has found that, in habeas, a writ based on this error will only issue "when [the] error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Hatten v. Quarterman*, 570 F.3d 595, 604 (5th Cir. 2009) (quoting *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007)). As we note above, Ramirez fails to show that his shackles were seen by the jury, and the state habeas court found that they had no influence on the jury.

[9] Similar to Ramirez's briefing of procedural default, Ramirez failed to argue whether or not the state habeas court's findings were unreasonable in his opening brief. Because he

debate whether the state court's factfinding was unreasonable.  Therefore, we conclude that Ramirez fails to show that reasonable jurists would debate whether the procedural default of his claims is excused.  Accordingly, we deny Ramirez's COA on his due process, public trial, and fair trial claims.[10]

## IV. REASONABLE JURISTS WOULD NOT FIND IT DEBATABLE THAT RAMIREZ HAS NOT SHOWN INEFFECTIVE ASSISTANCE OF COUNSEL

Unlike his other claims, Ramirez's ineffective assistance of counsel claims are preserved for federal habeas review.  In seeking a COA on his ineffective assistance argument, Ramirez alleges a number of errors by trial counsel.  In particular, Ramirez argues that trial counsel rendered ineffective assistance because: (1) counsel failed to inquire as to the jurors' views on the death penalty at voir dire; (2) counsel failed to object to Ramirez's absence at voir dire; (3) counsel failed to object to the exclusion of the public from voir dire; (4) counsel failed to object to Ramirez's shackling; (5) counsel failed to object to the introduction of evidence of Ramirez's arrest and robbery under Texas Rule of Evidence 404(b); and (6) counsel failed to present mitigating evidence and failed to realize that Ramirez was not competent to direct counsel to abandon mitigation at the punishment phase.

Ramirez's application for a COA on his ineffective assistance claim is not only governed by the standard under AEDPA but also by the standard for ineffective assistance claims under *Strickland v. Washington*, 466 U.S. 668

---

failed to do so, we consider any arguments on the reasonableness of the state court's findings of fact raised in Ramirez's reply brief to be waived.  *See Pyles*, 136 F.3d at 996 n.9.

[10] We decline to evaluate the merits of the three procedurally defaulted claims Ramirez now raises given our limited and deferential review under AEDPA, particularly when reviewing applications for COA.  However, we note briefly that both the state habeas court and the district court found that Ramirez's claims were without merit based on the factual findings made by the state habeas court.

(1984).    Under *Strickland*, ineffective assistance of counsel is a Sixth Amendment violation.  *Id.* at 686–87.  Ineffective assistance under *Strickland* will be found where counsel (1) rendered deficient performance that (2) prejudiced the defendant so as to deprive him of a fair trial.  *Id.* at 700.  As to the deficient performance prong, "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (quoting *Strickland*, 466 U.S. at 687); *see also Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland*'s high bar is never an easy task.").  In fact, *Strickland* makes clear that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  As to the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *Harrington*, 562 U.S. at 112.  This standard is a deferential one.

In addition, we note that our review on habeas in this case is "doubly deferential" because "[w]e take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'"  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112, 121 n.2 (2009)).  "Combining the *Strickland*, AEDPA, and COA standards," Ramirez "is entitled to a COA only if reasonable jurists could debate" the district court's conclusion that there was no *Strickland* violation and the "state habeas court's finding that there was no *Strickland* violation was contrary to, or an unreasonable application of clear Supreme Court law." *Battaglia v. Stephens*, 2015 WL 4257256, at *2 (5th Cir. July 15, 2015) (per curiam) (unpublished).  We address all of Ramirez's sub-claims as to ineffective

assistance in turn and find that reasonable jurists could not debate the lack of a *Strickland* violation by Ramirez's trial counsel.

## A. Counsel's Failure to Submit Death Penalty Questions to Potential Jurors

Ramirez first argues that his trial counsel rendered ineffective assistance by not properly questioning potential jurors about their views on the death penalty. Specifically, Ramirez argues that none of the jurors ultimately selected for trial were asked at voir dire about their views on whether the death penalty should apply to someone convicted of murder in the course of committing robbery. Ramirez also alleges that defense counsel failed to ask questions about the jurors' ability to consider evidence of future dangerousness and mitigation and that counsel should have used the Colorado method for juror selection. Because the ability of jurors to assess such evidence is critical in death penalty cases, Ramirez argues that counsel's failure to ask the jurors these questions constitutes deficient performance and is prejudicial because trial counsel could not ensure an impartial jury.

In *Morgan v. Illinois*, 504 U.S. 719 (1992), the Supreme Court held that "based on the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment, a capital defendant may challenge for cause any prospective juror" who "has already formed an opinion on the merits [as to a capital sentence regardless of] the presence or absence of either aggravating or mitigating circumstances." *Id.* at 729. The Court subsequently held it was constitutional error not to allow defendants to identify and exclude jurors who held "dogmatic beliefs about the death penalty" at voir dire. *Id.* at 735. But with respect to deficient performance at voir dire, we have noted that an "attorney's actions during voir dire are considered to be a matter of trial strategy." *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). And "[a] decision regarding trial tactics cannot be the basis for a claim of ineffective assistance

of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). This is because "in determining whether counsel's performance was deficient, we must be highly deferential to counsel's trial strategy." *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002).

Although trial counsel did not ask the specific questions that Ramirez now claims counsel should have asked or use a specific method of juror selection, the state habeas court found that trial counsel used juror questionnaires to sift through the prospective jurors' death penalty views. These questionnaires posed questions designed to identify and eliminate jurors who would not be able to fully and fairly consider future dangerousness and mitigation. These questions included asking potential jurors about their views on the death penalty, whether they would automatically impose the death penalty in every capital murder case, and whether a life sentence might be appropriate in some circumstances. The state habeas court ultimately concluded that defense counsel had examined the potential jurors extensively and that each juror was asked, in one form or another, whether he or she could consider all the evidence before sentencing Ramirez to death.

Ramirez's argument that trial counsel should have asked specific questions at voir dire amounts to a disagreement about trial strategy. However, under *Strickland* we usually defer to counsel's trial strategy. Moreover, Ramirez fails to show that the tactic of using juror questionnaires was "so ill chosen that it permeate[d] the entire trial with obvious unfairness."[11] *Teague*, 60 F.3d at 1172 (quoting *Garland*, 717 F.2d at 206). As

---

[11] Ramirez's opening brief in support of an application for COA does not address the juror questionnaires.

the state habeas court found, the juror questionnaires coupled with the questions that were asked at voir dire were sufficient to filter jurors who had dogmatic views on the death penalty. Given our highly deferential standard and the findings of the state habeas court, reasonable jurists could not debate the district court's holding that Ramirez failed to show ineffective assistance on this sub-claim.

**B. Counsel's Failure to Object to Absence of Ramirez during Voir Dire**

Ramirez's second argument for ineffective assistance is that his trial counsel failed to object to Ramirez's absence during voir dire. Ramirez argues that his absence at voir dire violated his Confrontation Clause rights and that this error should have been preserved by counsel. Ramirez argues that his absence and the resulting failure to object had a reasonable possibility of prejudice since the parties agreed to excuse 52 potential jurors at the proceeding where Ramirez was not present.

A defendant's "constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment . . . but . . . this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526 (1985). Our court has recognized that this due process right extends to jury impanelment. *See United States v. Thomas*, 724 F.3d 632, 642 (5th Cir. 2013) ("The right to be present at jury impanelment is protected by the . . . Due Process Clause."); *see also id.* (noting that jury impanelment "is 'a stage at which the defendant can provide meaningful assistance to counsel.'" (quoting *United States v. Alikpo*, 944 F.2d 206, 210 (5th Cir. 1991))). However, this right is not absolute. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence," *Gagnon*, 470 U.S. at 526 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107–08 (1934)), and "the exclusion of a defendant

from a trial proceeding should be considered in light of the whole record," *id.* at 526–27. As such, we have recognized that the right to be present at impanelment may be waived. *See Thomas*, 724 F.3d at 643 ("[T]o waive a constitutional right to be present at jury impanelment, the waiver must be particularly informed or voluntary."). And even without waiver, we have noted that the absence of a defendant from jury impanelment is error only when the absence had "a prejudicial impact" and "affected the outcome of the . . . proceedings." *Id.* at 646; *see also Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) ("[The] privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" (quoting *Snyder*, 291 U.S. at 106–07)).

Reasonable jurists would not debate the district court's holding that trial counsel did not render ineffective assistance by failing to object to Ramirez's absence at trial because Ramirez's absence did not prejudice the outcome of his trial. Although it is unclear why Ramirez was absent from voir dire,[12] Ramirez fails to show prejudice both with respect to the Due Process Clause and under *Strickland*. In fact, the state habeas court found a lack of prejudice from Ramirez's absence and found that counsel acted reasonably with respect to keeping Ramirez informed of the juror strikes. The state habeas court made findings of fact that Ramirez had discussed with counsel and agreed on the juror strikes that were later made at voir dire and had given trial counsel discretion to make such strikes.

## C. Counsel's Failure to Object to Exclusion of Public from Voir Dire

Ramirez also argues that his trial counsel rendered ineffective assistance by failing to object to the exclusion of the public from voir dire. However, as we noted previously, the state habeas court made findings of fact that no such

---

[12] Ramirez claims that his absence was not an implicit waiver of his right to be present at proceedings. We need not address this point, however.

exclusion occurred.   Under AEDPA, we give deference to this finding of fact absent a showing by the petitioner that it was unreasonable.   28 U.S.C. § 2254(d).   And Ramirez fails to contradict the state court's findings or show that the findings were unreasonable in his opening brief seeking an application for a COA.   Because we find that Ramirez has not adequately briefed the underlying factual issue, we find that his argument on this sub-claim is waived.  *See Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) ("Where a habeas petitioner fails to brief an argument adequately, we consider it waived."); *see also Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995) (finding arguments waived where they are not raised in an opening brief).

### D. Counsel's Failure to Object to Ramirez's Shackling

Ramirez next argues that counsel rendered ineffective assistance by failing to object to Ramirez's shackling.   Much like Ramirez's claim that counsel failed to object to the exclusion of the public from voir dire, the factual basis for this claim is directly controverted by the findings of fact made by the state habeas court.   The state habeas court found that there was no evidence that the jury had seen Ramirez shackled or had noticed the sound of his shackles so that the shackles would have influenced the jury's result.   As Ramirez fails to challenge the state habeas court's factfinding on this issue in his opening brief seeking an application for a COA, we find that this argument is similarly waived.  *See Lookingbill*, 293 F.3d at 263; *Cavallini*, 44 F.3d at 260 n.9.

### E. Counsel's Failure to Object to 404(b) Evidence

Ramirez also argues that trial counsel was ineffective by failing to object at trial to the State's introduction of evidence that Ramirez committed aggravated robbery and attempted aggravated robbery on the night of Castro's murder and then evaded the police.   According to Ramirez, the introduction of

this evidence violated Texas Rule of Evidence 404(b) because it was evidence of extraneous offenses.[13]  Because trial counsel failed to object to this evidence and argue for its exclusion, Ramirez argues that he was not able to raise the objection on direct appeal.  Ramirez also seems to suggest that trial counsel did not have adequate notice of the introduction of this evidence and should have objected to this lack of notice, as Texas Rule of Evidence 404(b) requires that the prosecution provide reasonable notice before trial when it seeks to introduce evidence of other crimes or wrong acts.

Reasonable jurists could not debate the district court's holding that trial counsel's failure to object to the introduction of Rule 404(b) evidence did not amount to ineffective assistance.  As the district court correctly noted, the ineffective assistance claim by Ramirez here is rooted in an alleged error of state law.  We have cautioned that "[i]n habeas actions this court does not sit to review the mere admissibility of evidence under state law," and that these errors only merit relief where they "are so extreme that they constitute a denial of fundamental fairness." *Little v. Johnson,* 162 F.3d 855, 862 (5th Cir. 1998).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in

---

[13] Texas Rule of Evidence 404(b) provides, in relevant part:

(b) Crimes, Wrongs, or Other Acts.
   (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
   (2) Permitted Uses; Notice in Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence--other than that arising in the same transaction--in its case-in-chief.

Tex. R. Evid. 404(b).

habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). Given these principles, we accept the finding of the state habeas court that the introduction of the other offense evidence in Ramirez's case was not legal error. In addition, Ramirez's claim of error is foreclosed by the state habeas court's findings of fact. The state habeas court found that counsel had verbal notice that the prosecutor intended to put on evidence of Ramirez's other offenses at trial as part of the murder count, but that trial counsel conceded the evidence would be admissible. The state habeas court added that it was not clear that written notice of 404(b) evidence had to be provided rather than verbal notice. Moreover, the court found that the evidence presented by the State was "same transaction contextual evidence" that did not violate 404(b) and did not require notice.[14]

## F. Counsel's Failure to Present Mitigating Evidence

Finally, Ramirez argues that trial counsel was ineffective because counsel failed to present mitigating evidence at the punishment phase of Ramirez's trial. Ramirez alleges that trial counsel failed to interview certain witnesses and failed to investigate and develop mitigating evidence. Ramirez also argues that trial counsel failed to put on sufficiently available mitigation evidence by resting after the first day of sentencing.[15] While Ramirez acknowledges that he instructed trial counsel not to put on any mitigation evidence after the first day, he argues that counsel was ineffective in failing to

---

[14] "Same transaction contextual evidence" is evidence that reflects the context in which a criminal act occurred and is admissible under Texas Rule of Evidence 404(b) where it is necessary to the jury's understanding of the offense. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). On direct appeal of Ramirez's conviction, the Texas Court of Criminal Appeals reached the conclusion, as the state habeas court later did, that the evidence introduced by the State was admissible under Rule 404(b). *See Ramirez*, 2011 WL 1196886, at *15.

[15] In his application for a COA, Ramirez recounts the same potential mitigation evidence he presented to the state habeas court, including his abusive family history, his drug problems, and his previous behavioral problems.

recognize that Ramirez was suicidal and irrational at the time and was therefore unable and incompetent to direct counsel.  For support, Ramirez points to testimony from Dr. Murphey, an expert who testified at the state habeas hearing.  Dr. Murphey testified that Ramirez's decision to abandon the punishment phase was flawed and that Ramirez was likely suicidal and irrational when he made the decision.  Ramirez argues that but for counsel's failure to present mitigation testimony, there would have been a reasonable probability that he would have received a life sentence rather than a death sentence.

Failure to conduct a sufficient mitigation defense and investigation in a death penalty case may constitute ineffective assistance of counsel in violation of the Sixth Amendment.  *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (finding ineffective assistance where lawyers failed to investigate a prior conviction in preparation for a mitigation phase); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (finding ineffective assistance where counsel failed to investigate petitioner's personal background).  We have also held, though, that "when a defendant blocks his attorney's efforts to defend him . . . he cannot later claim ineffective assistance of counsel." *Roberts v. Dretke*, 356 F.3d 632, 638 (5th Cir. 2004); *see also Sonnier v. Quarterman*, 476 F.3d 349, 361–63 (5th Cir. 2007) (finding no *Strickland* violation where the defendant directed counsel specifically not to present mitigation evidence).   "However, if the defendant was not competent to make . . . instructions [directing counsel not to present mitigation] then he may pursue his *Strickland* claim." *Roberts*, 356 F.3d at 638.  In determining a defendant's competence to waive a mitigation case, "a competency hearing is not automatically required before counsel can accept a client's decision to not present evidence during the sentencing phase of a capital trial," *Wood v. Quarterman*, 491 F.3d 196, 204 (5th Cir. 2007), and "is necessary only when a court has reason to doubt the defendant's

competence," *id.* at 205 (quoting *Godinez v. Moran*, 509 U.S. 389, 401 n.13 (1993)).

Reasonable jurists would not debate the district court's holding that Ramirez's trial counsel's mitigation case did not amount to ineffective assistance. First, reasonable jurists would not find that Ramirez's trial counsel failed to sufficiently investigate and prepare a mitigation case. Ramirez's arguments on this point are premised on the supposed failure of counsel to interview certain members of Ramirez's family, a statement from Ramirez's grandmother that she was not interviewed about his background, and allegations from other members of Ramirez's family that counsel did not know much about Ramirez's personal history. However, the state habeas court, to which we defer under AEDPA, concluded that trial counsel had questioned a sufficient number of witnesses and made sufficient preparations for witness testimony in order to be able to present a convincing mitigation case. As with Ramirez's other arguments on ineffective assistance, he fails to show in his opening brief that the state habeas court's finding of fact was unreasonable.

Second, reasonable jurists would not find that trial counsel rendered ineffective assistance when counsel decided to stop their mitigation case at Ramirez's request. Ramirez's "directions were entitled to be followed," *Lowenfield v. Phelps*, 817 F.2d 285, 292 (5th Cir. 1987), absent evidence that he was not competent to waive mitigation. According to the state habeas court's findings, Ramirez's counsel tried to ascertain Ramirez's competence in waiving mitigation. Counsel explained to Ramirez the consequences of failing to present a mitigation case, and the attorneys believed that Ramirez presented a coherent and logical reason for directing his attorneys to not present a mitigation case, namely that Ramirez did not want a life sentence and wanted to avoid spending the rest of his life in jail. The state habeas court also noted that the trial court, after hearing of Ramirez's request to waive

mitigation, heard testimony from Dr. Martinez on Ramirez's competence. Dr. Martinez testified that he had interviewed Ramirez and that Ramirez had articulated specific and explicit reasons for the decision not to present mitigating evidence. The state habeas court concluded that this evidence showed that Ramirez did not show incompetence in waiving his mitigation defense. Although Ramirez argues that counsel should have recognized he was incompetent based on testimony at his state habeas hearing by Dr. Joann Murphey, the state habeas court specifically found Dr. Murphey's testimony to not be credible. And Ramirez fails to show that the state habeas court's credibility determination was based on an unreasonable view of the facts. Absent evidence of incompetence on Ramirez's part, Ramirez cannot allege ineffective assistance based on his trial counsel's failure to present mitigation evidence when the failure was the result of respecting Ramirez's own request.

## V. CONCLUSION

For the foregoing reasons, we DENY a COA as to all of Ramirez's claims for relief.