# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 6, 2021

Lyle W. Cayce
Clerk

No. 21-70004

John H. Ramirez,

*Plaintiff—Appellant*,

*versus*

Bryan Collier, Executive Director, Texas Department of Criminal Justice; Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division; Dennis Crowley, Warden, TDCJ, Huntsville, TX,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2609

Before Owen, *Chief Judge*, Higginbotham and Dennis, *Circuit Judges*.

Per Curiam:

John Henry Ramirez was convicted in a Texas state court of capital murder and was sentenced to death. He exhausted his state-court appeals, then sought and was denied habeas corpus relief in the state and federal courts. The State of Texas set an execution date of September 8, 2021. Ramirez has filed suit under 42 U.S.C. § 1983, contending that the manner

No. 21-70004

in which Texas plans to execute him will violate the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[1] Ramirez sought a stay of his execution, and the district court denied that motion. Ramirez has appealed.

We DENY the motion for a stay of execution.

---

[1] 42 U.S.C. §§ 2000cc *et seq.*

No. 21-70004

PRISCILLA R. OWEN, *Chief Judge*, concurring:

I concur in the denial of the motion to stay the execution.

With regard to Ramirez's claims that his rights under the Free Exercise Clause of the First Amendment will be violated, I agree with the analysis in JUDGE DENNIS's opinion and in the district court's Order Denying Stay of Execution. The district court did not abuse its discretion in concluding that Ramirez failed to establish a likelihood of success on the merits of his First Amendment claims.[2]

I part company with JUDGE DENNIS's opinion as to Ramirez's claims under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[3] As JUDGE HIGGINBOTHAM's opinion explains, the administration of the drugs to cause demise is far from simple.

I note additionally that the State has asserted in its briefing that the Federal Bureau of Prisons ("BOP") does not permit spiritual advisors to have physical contact with a person condemned to death while the advisor is present in an execution chamber during an execution, and the BOP places restrictions on verbal communications by spiritual advisors while in the execution chamber. Given the time constraints under which our court is operating, I have not been able to locate documentation of the State's assertions. But Ramirez has had the opportunity to challenge those assertions in the district court and in this court and has not done so. Ramirez has not pointed to any jurisdiction in which spiritual advisors are permitted to have physical contact with a person while he or she is executed, or any jurisdiction that permits a spiritual adviser, while in the death chamber during the actual execution process, to talk to the prisoner or otherwise

---

[2] Slip Op. at 8.

[3] 42 U.S.C. §§ 2000cc *et seq.*

vocalize. Courts, including the Supreme Court, often consider practices and policies implemented in state and federal prisons in conducting a least-restrictive-means analysis.[4] The State met its burden of establishing that its current policy regarding spiritual advisers is the least restrictive means of furthering its compelling government interest "in maintaining an orderly, safe, and effective process when carrying out an irrevocable, and emotionally charged, procedure."[5]

I also note that in Ramirez's prior 42 U.S.C. § 1983 suit, he asserted that "Pastor Moore need not touch [Ramirez] at any time in the execution chamber." Ramirez's present demand that Pastor Moore be permitted to lay hands on him throughout the execution process and until death has occurred, raises the concern that Ramirez's change in position has been asserted to delay his execution. Though I do not doubt the sincerity of Ramirez's religious beliefs or those of his pastor, the shifting of Ramirez's litigation posture indicates that the change in position is strategic and that delay is the goal. I do not doubt that Ramirez desires his spiritual adviser to touch him and to pray with and over him until Ramirez's life is ended. But to raise this desire as a constitutional or statutory violation after previously disavowing the need for physical contact during the execution process means that the district court's exercise of discretion was not an abuse of that discretion.

---

[4] *See, e.g.*, *Dunn v. Smith*, 141 S.Ct. 725, 726 (2021) (KAGAN, J., concurring in the denial of an application to vacate an injunction) ("In the last year, the Federal Government has conducted more than 10 executions attended by the prisoner's clergy of choice—exactly what Smith requests."); *id.* at 726-27 (KAVANAUGH, J., dissenting from the denial of an application to vacate an injunction) ("[I]t seems apparent that States that want to avoid months or years of litigation delays because of this RLUIPA issue should figure out a way to allow spiritual advisors into the execution room, as other States and the Federal Government have done.").

[5] Slip. Op. at 6.

No. 21-70004

Higginbotham, J. concurring in the denial of the motion for a stay of execution.

John Henry Ramirez claims that denial of his request to allow his spiritual advisor to lay his hands on him during his execution by lethal injection violates his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[6] Such denials are reviewed under a standard of strict scrutiny requiring the state to employ the least restrictive means to further a compelling governmental interest.

TDCJ revised its Execution Procedure on April 21, 2021 to allow spiritual advisors to be present in the execution chamber but does not allow them to physically touch prisoners in the execution chamber.[7] Looking at the execution procedure implemented by Texas along with the procedures of the Federal Bureau of Prisons ("BOP") and other states with death by lethal injection, we find a nigh universal reluctance to allow individuals access to the execution chamber beyond the medical team—persons immediately required for medical and security purposes.[8] Mindful that the execution chamber is the last step. A prisoner is prepared for the execution chamber in an adjacent room. There he is undressed (shorts and sox) and placed on a gurney. Here spiritual advisors are allowed but not in the execution chamber. This is the general statutory response: prisoners have access to spiritual advisors. Texas went further in not only allowing the prisoner to be with a

---

[6] 42 U.S.C. § 2000cc *et seq.*

[7] Texas Department of Criminal Justice, Correctional Institutions Division, Execution Procedure (Apr. 21, 2021).

[8] *See* 28 C.F.R. § 26.4 (2020); Nevada Department of Corrections, Execution Manual (Jun. 9, 2021); Idaho Department of Correction, Execution Procedure (Mar. 30, 2021); North Carolina Department of Public Safety, Execution Procedure Manual for Single Drug Protocol (Oct. 24, 2013); State of Louisiana Department of Public Safety and Corrections, Field Operations Adult Institutions Death Penalty (Mar. 12, 2014).

No. 21-70004

spiritual advisor for the two hours leading up to the execution in the first chamber but also allowing the spiritual advisor to be present in the execution chamber itself albeit only hands of the medical team touch the prisoner.

While lethal injection may seem straightforward, the actual administration of the drugs and pronouncement of death is both delicate and fraught with difficulties as evidenced by the responses of regulatory bodies and the experience of this Court with mishaps in execution by lethal injection The Texas Execution Procedure demonstrates the logistical complexities involved, setting forth a detailed schedule for the weeks and days leading up to an execution and requirements for the medical personnel present with precise detail of each step of the medical team. In short, the complexities attending the administration of drugs in the execution procedure and its failures expose the risks of non-medical hands on the body of a person undergoing the procedure. This is plainly a humane effort with constitutional footing with steps long side those of spiritual needs. But of course the state must also demonstrate that there is not an alternative means of serving its compelling interest. No hands means no hands.

I concur in the order denying the stay of execution.

No. 21-70004

James L. Dennis, *Circuit Judge*, dissenting:

Texas inmate John Henry Ramirez is scheduled to be executed on September 8, 2021. Currently, Ramirez has pending in district court a § 1983 lawsuit challenging the Texas Department of Criminal Justice's ("TDCJ") current execution policy ("the policy"). Ramirez asserts that, pursuant to the policy, he will be executed in a manner that violates his religious rights. Under the policy, Ramirez's spiritual advisor, Pastor Dana Moore, will be permitted to be present in the execution chamber during Ramirez's execution. However, Pastor Moore will not be permitted to (1) audibly pray, or (2) physically touch Ramirez to confer ministrations and a spiritual blessing upon him. Ramirez contends that audible prayer and physical touch are components of his religious faith and that the policy prohibiting him from exercising these practices violates his rights under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA). On August 18, 2021, Ramirez filed a motion for a stay of execution in the district court. On September 2, 2021, the district court denied Ramirez's motion.

Today, the majority affirms that decision and denies Ramirez a stay. In doing so, the majority fails to follow the most recent Supreme Court guidance in this evolving area. Ramirez's § 1983 suit implicates vitally important interests, and, at this stage of the litigation, he has made a strong showing that he is likely to succeed on the merits. I would grant a stay of execution and remand the case for further proceedings. Therefore, I dissent from the court's denial of Ramirez's motion for a stay of execution.

**I.**

In 2008, Ramirez was convicted by a Texas jury of capital murder and sentenced to death. *See generally Ramirez v. Stephens*, 641 F. App'x 312, 314 (5th Cir. 2016). Relevant to this appeal, on February 5, 2021, the execution

date of September 8, 2021 was set. On April 21, 2021, TDCJ adopted the policy. On August 10, 2021, Ramirez filed the instant lawsuit under 42 U.S.C. § 1983 challenging the policy.

## II.

An inmate's filing of a § 1983 action does not result in a stay of execution as a matter of course. *Hill v. McDonough*, 547 U.S. 573, 583–84 (2006). "[A] stay of execution is an equitable remedy." *Id.* at 584. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). "In deciding whether to grant a stay of execution, the district court was required to consider four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Green v. Thaler*, 699 F.3d 404, 411 (5th Cir. 2012) (quoting *Nken*, 556 U.S. at 434). The first two factors are the most significant. *Nken*, 566 U.S. at 434.

## III.

The district court determined that Ramirez was not entitled to a stay either as to his Free Exercise Clause claim or his RLUIPA claim. While I agree that Ramirez is not entitled to a stay on his Free Exercise Clause claim under the deferential standard established by the Supreme court in *Turner v. Safley*, 482 U.S. 78 (1987), I strongly disagree that Ramirez has not shown his entitlement to a stay as to his RLUIPA claim. Therefore, unlike the majority, I would grant a stay of execution and remand for the district court to consider the merits of Ramirez's challenge.

RLUIPA grants "expansive protection for religious liberty," affording an inmate with "greater protection" than the Supreme Court's relevant First

Amendment precedents. *Holt v. Hobbs*, 574 U.S. 352, 358, 361 (2015). RLUIPA provides that the government shall not "impose a substantial burden" on an inmate's "religious exercise" unless the government shows that imposing such a burden can withstand strict scrutiny, meaning the policy "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Importantly, RLUIPA utilizes a burden-shifting framework. *Holt*, 574 U.S. at 360–62. First, the inmate, Ramirez, bears the initial burden of showing that a government policy substantially burdens his religious exercise. *Id.* at 360–61. If he does so, then the burden shifts to the State to show that its policy can withstand RLUIPA's strict scrutiny standard. *Id.* at 362. The Supreme Court has characterized this standard as "exceptionally demanding." *Id.* at 364. "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* at 365 (alteration in original).

## A.

Under RLUIPA, "religious exercise" is defined broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt*, 574 U.S. at 360–61. Ramirez's receipt of audible prayer and physical touching by a pastor to convey a spiritual blessing when death is imminent are clearly "exercise[s] of religion," and, like the district court, I see no reason to question the sincerity of Ramirez's religious beliefs.

The next question is whether the TDCJ policy results in a substantial burden on that religious exercise. Recently, the Supreme Court has considered a number of cases regarding spiritual advisors and executions. *See*

No. 21-70004

*Dunn v. Ray*, 139 S. Ct. 661 (2019); *Murphy v. Collier*, 139 S. Ct. 1475 (2019); *Gutierrez v. Saenz*, 141 S. Ct. 127 (2020); *Dunn v. Smith*, 141 S. Ct. 725 (2021). The two most recent cases—*Gutierrez v. Saenz* and *Dunn v. Smith*—address spiritual advisor claims brought pursuant to RLUIPA and are especially relevant to this case. In both cases, the Supreme Court addressed policies—one in Texas and one in Alabama—that prohibited the presence of any spiritual advisor in the execution chamber. Of course, Ramirez's challenge to the current TDCJ policy is related, though not identical, to Gutierrez's or Smith's; after the *Gutierrez* case, Texas changed its policy to allow the presence of a spiritual advisor in the execution chamber. Regardless, because the material facts in all three cases are substantially similar, both *Gutierrez* and *Smith* support the conclusion that Ramirez has made a strong showing that the current policy imposes a substantial burden on his religious exercise.

In *Gutierrez*, a panel of our court vacated the district court's grant of a stay of execution. The panel determined that, while a policy prohibiting the presence of a spiritual advisor in the execution chamber may have "denied the final measure of spiritual comfort that might be available," such a policy "does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from enjoying some benefit that is not otherwise generally available." *Gutierrez v. Saenz*, 818 F. App'x 309, 314–15 (citing *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004), *vacated*, 141 S. Ct. 1260 (2021). Days later, the Supreme Court granted Gutierrez a stay and directed the district court in that case to make factual findings regarding "whether serious security problems would result if a prisoner facing execution is permitted to choose the spiritual adviser the prisoner wishes to have in his immediate presence during the execution." *Gutierrez*, 141 S. Ct. at 127.

No. 21-70004

The Court did not provide reasons. However, the grant of a stay and the scope of the Court's directive to the district court strongly suggests that the Court determined that Gutierrez had satisfied his initial burden of showing a substantial burden on his religious exercise. After the district court made findings that no security problem would result, the Supreme Court granted certiorari, vacated our court's panel decision, and remanded the case for consideration on the merits. *Gutierrez*, 141 S. Ct. 1260, 1261 (2021). Again, had the Court thought that the policy did not impose a substantial burden on religious exercise, there would have been no reason for vacatur or remand. The Supreme Court's rulings in *Gutierrez* are thus necessarily a rejection of the panel's reasoning in that case.

In *Smith*, the Court denied Alabama's motion to vacate an injunction prohibiting the execution of Willie Smith without his minister present in the execution chamber. 141 S. Ct. at 725. While the Court did not provide reasons, Justice Kagan did so in a concurrence joined by Justices Breyer, Sotomayor, and Barrett. The concurrence stated that, by barring the presence of his minister in the execution chamber, "Alabama's policy substantially burden[ed] Smith's exercise of religion" because Smith understood his minister's presence in the execution chamber as integral to his faith and part of his spiritual search for redemption, and because "[t]he sincerity of those religious beliefs is not in doubt." *Id.* at 725 (Kagan, J., concurring). The concurrence concluded with the broad statement that "[t]he law guarantees Smith the right to practice his faith free from unnecessary interference, including at the moment the State puts him to death." *Id.* at 726.

Similar to *Smith,* in this case Ramirez alleged, *inter alia*, that the laying on of hands by Pastor Moore is "in accordance with" his "faith tradition," is "necessary to bless [him] at the moment of his death," and that the practice of audible prayer combined with physical touch is based in

"Christian scripture."     First Amended Complaint at 5-6, ¶17-19.
Additionally, Ramirez submitted an affidavit from Pastor Moore stating that
the practice of touch has "significance and power," that when he "pray[s]
with others in a crisis situation, [he] holds their hand or put[s] [his] hand on
their shoulder," and that this is "a significant part of our faith tradition."
First Amended Complaint, Exh 2.  Similar to *Smith*, the district court in this
case did not question the sincerity of Ramirez's religious beliefs, and neither
do I.   Thus, following *Gutierrez* and *Smith*, because the current policy
prohibits Ramirez from engaging in sincerely-held religious practices, it also
imposes a substantial burden on his religious exercise.

In light of *Gutierrez* and *Smith*, it was an abuse of discretion for the
district court to determine that Ramirez had not made a strong showing that
the TDCJ policy imposes a substantial burden on his religious exercise.[9]  For
the same reasons, both *Gutierrez* and *Smith* support Ramirez's argument that
he has made a strong showing of likely success on the merits and is therefore
entitled to a stay.  Crucially, once Ramirez makes his initial showing under

---

[9] The district court also abused its discretion by improperly relying on the fact that
Ramirez would be able to meet and pray with Pastor Moore for several hours on the day of
his execution and the fact that Pastor Moore would be present in the execution chamber in
determining that the current policy preventing audible prayer and physical touch during
the execution imposed no substantial burden.  The Supreme Court made clear in *Holt* that
this type of analysis—considering the availability of alternative means of practicing
religion—is not relevant in the RLUIPA context. 574 U.S. at 361–62. This "alternative
means" analysis derives from the Court's precedents concerning prisoners' First
Amendment rights, but RLUIPA provides prisoners with "greater protection" than the
First Amendment, and RLUIPA's substantial burden inquiry asks whether the government
has burdened a specific religious exercise, not whether the prisoner is able to engage in
other forms of religious exercise. *Id.*  As explained above, utilizing the proper analysis,
Ramirez has made a strong showing that the TDCJ policy imposes a substantial burden on
his religious exercise.

RLUIPA, the burden shifts to the State to prove that the policy satisfies the statute's strict scrutiny test. *See Holt*, 547 U.S. at 362.

## B.

As explained in the preceding section, Ramirez has made a strong showing that the policy imposes a substantial burden on his religious exercise. Further, he has proffered that Pastor Moore is willing to submit to additional security measures. *See* Complaint at 6, ¶20. After a claimant makes an initial showing of a substantial burden, the burden then shifts to the government to prove that its policy satisfies RLUIPA's strict scrutiny standard. *See Holt*, 574 U.S. at 362. In this phase of the litigation, the State has not met its burden.

The district court stated that, even if Ramirez could show that the policy imposed a substantial burden, he had not made a strong showing that it is not the "least restrictive means." This was legal error, and therefore an abuse of discretion, because the district court placed the burden on the wrong party. According to relevant Supreme Court precedents, it is not Ramirez's burden—even at this early stage of litigation—to disprove that the State is utilizing the least restrictive means; rather, it is the State's burden to show that its policy utilizes the least restrictive means and therefore satisfies RLUIPA's strict scrutiny standard. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) (holding that, in the analogous context of a preliminary injunction under the Religious Freedom Restoration Act, "the burdens at the preliminary injunction stage track the burdens at trial" such that it was the government's burden to satisfy RFRA's strict scrutiny standard and not the plaintiff's burden to disprove it) (citing *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)).

As for the State's burden, there is no doubt that security of an execution is a "compelling governmental interest." *See, e.g. Smith*, 141 S. Ct.

No. 21-70004

at 725 (Kagan, J., concurring) ("[P]rison security is, of course, a compelling state interest."). But to satisfy RLUIPA, the State must also meet the "exceptionally demanding" standard of showing that the policy is truly the "least restrictive means" available, which "requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 574 U.S. at 364-65 (quoting *Burwell v. Hobby Lobby*, 573 U.S. 682, 728 (2014)) (alterations in original). In other words, the burden is on the State to specifically show that its "'application of the challenged law to the person—the particular claimant whose sincere exercise of religions is being substantially burdened'" can satisfy RLUIPA's strict scrutiny standard. *Id.* at 363 (quoting *Hobby Lobby*, 573 U.S. at 726).

At least at this early stage in the litigation, the State has not met that demanding and specific burden. The State has not shown why its policy of prohibiting even a brief audible prayer and any physical touching is the least restrictive means of achieving its compelling interest in this specific case. Rather, the State has largely offered general concerns about security. I do not doubt that these concerns are legitimate and important. But that is not enough to satisfy RLUIPA's "exceptionally demanding" standard. *Holt*, 574 U.S. at 364. In my view, the concurring opinions of CHIEF JUDGE OWEN and JUDGE HIGGINBOTHAM, like the district court, do not hold the State to the burden that Congress mandated in RLUIPA. It is not enough, as CHIEF JUDGE OWEN and JUDGE HIGGINBOTHAM suggest, for the State to argue that its policy is consistent with the Federal Bureau of Prisons' policy. Under RLUIPA and pertinent Supreme Court precedent, the State needs to show why its policy disallowing Pastor Moore from uttering any audible prayer or engaging in any touching, as applied specifically to Ramirez, is the least restrictive means of achieving its compelling interest. *See Holt*, 574 U.S. at 363-65. The religious utility and importance of Ramirez having

14

No. 21-70004

his pastor with him in the execution room will be diminished by the State's policy, and the State has not shown why having a spiritual advisor in the room, but requiring that advisor to remain mute and refrain from showing signs of comfort or religious concern, is essential and the least restrictive means available for the State to carry out the execution.

Thus, at this point in the litigation, I conclude that Ramirez has made a strong showing that he is likely to succeed on the merits of his RLUIPA claim because he has carried his burden of showing that the policy imposes a substantial burden on his religious exercise, while the State has not carried its burden of showing that the policy utilizes the least restrictive means available to achieve its compelling governmental interest in a secure execution. In light of this conclusion, I further conclude that the other stay factors weigh in Ramirez's favor, such that a stay of execution is warranted so that the district court can consider these important issues.

*     *     *

What purpose is there for allowing a spiritual advisor, like a pastor, to be present in the execution chamber if that pastor is prohibited from attending to the spiritual needs of the condemned during the final moments of his life, through audible prayer, physical touch, or otherwise? At the end of life, what does a pastor do but minister to and comfort his parishioner? Ramirez is raising these pressing questions, which were arguably implicit in the Supreme Court's recent decisions in *Gutierrez* and *Smith*, even if they were not squarely presented. If a stay were granted, Ramirez may or may not ultimately prevail on the merits of his RLUIPA claim. On the merits, the State may or may not be able to prove that the policy satisfies RLUIPA's demanding standards. In denying a stay of execution, the majority fails to heed the Supreme Court's recent guidance, with the troubling result that Ramirez may very well suffer the irreparable injury of being executed in a

15

No. 21-70004

manner that violates his religious rights before a court is able to adjudicate his claims on the merits.   Therefore, respectfully, I dissent from the court's denial of Ramirez's motion for a stay of execution.